30 So.2d 689

**SCOTT v. STATE.**

**7 Div. 889.**

Supreme Court of Alabama.

April 17, 1947.

Rehearing Denied June 19, 1947.

A. A. Carmichael, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

Harvey A. Emerson, of Anniston, for appellant.

SIMPSON, Justice.

The State's evidence established that LeRoy Scott and another negro alternately raped a white woman at the city dump in Anniston, Alabama, and that thereafter, on the same night, while his two confederates were restraining her male companion, LeRoy subjected his victim to a second ravishment. His defense was an alibi. On this conflicting evidence he was convicted of the offense of rape, received the death penalty, and has appealed from that sentence.

It was within the prerogative of the trial court to exclude from the courtroom all attendants and spectators except the defendant and such others as were necessary for the proper conduct of the

trial. Our State Constitution has vested in the courts this exceptional discretion in cases of rape and assault with intent to ravish. 1901Const. § 169; Wade v. State, 207 Ala. 1, 92 So. 101; Id., 207 Ala. 241, 91 So. 104.

■ There was likewise no error in permitting the State to prove the nature of duress imposed on the prosecutrix to induce submission and, on the issue of non-consent, whether she was frightened when the intercourse was transacted. The rule in Alabama is that, ordinarily, a witness on direct examination may not testify regarding mental operations, such as opinion, belief, motive, purpose or intent. Recent and extended treatment of the subject may be found in McGuff v. State, 248 Ala. 259, 27 So.2d 241. The precise question here presented was decided by this court in the case of Alabama Power Co. v. Edwards, 219 Ala. 162(13), 121 So. 543, where it was pointed out that fear, a physical fact in contradistinction to motive, intent, mental anguish, etc., may be spoken of and the witness may testify that he or she was "scared." The principle of the last cited case was reaffirmed in the McGuff case and is regarded by us as authoritative and conclusive to the opinion that no error intervened in permitting the prosecutrix to testify as aforesaid.

■ The main argument for reversal is rested on the insistence that the trial court erred in permitting the State to give evidence of certain accusatory statements made against the defendant by one of his confederates after their arrest. The State proved by the testimony of one of the police officers that while the defendant and his confederate, Lee Curtis Williams, were being questioned in jail as to their complicity in the crime, Williams stated in the presence of the defendant that the defendant told them, when they had started home after leaving the scene of the crime, that he had twice had sexual intercourse with the prosecutrix, and that upon this accusation the defendant made no response, but remained silent. It is contended that the admission of this evidence was erroneous.

Statements of this nature by a co-conspirator, made out of the presence of the accused after the termination of the conspiracy and not of the res gestae, are, of course, inadmissible against the accused, as hearsay.

■ If, however, statements tending to incriminate him were made in his presence, were understood by him and were of such character and made under such circumstances as naturally to invite a reply or a denial, and he was so circumstanced as that he should and could refute them, his silence or omission to controvert or explain them renders such statements and the fact of accused's acquiescence or silence in regard to them provable against him. This, under the rule of implied admissions. Clark v. State, 240 Ala. 65, 197 So. 23; Bachelor v. State, 216 Ala. 356, 113 So. 67; Jackson v. State, 213 Ala. 143, 104 So. 220; Jackson v. State, 167 Ala. 44, 52 So. 835; Raymond v. State, 154 Ala. 1, 45 So. 895; Davis v. State, 131 Ala. 10, 31 So. 569; Abercrombie v. Allen, 29 Ala. 281; Sparf v. United States, 156 U.S. 51, 15 S. Ct. 273, 39 L.Ed. 343; 80 A.L.R. 1235 et seq.; 115 A.L.R. 1510 et seq.

■ To be admissible the circumstances under which the unrefuted, accusatory statements were made must have been such as, first, would have afforded an opportunity to enter a denial or objection, and second, as naturally would provoke a reply. Raymond v. State, supra; 80 A.L.R. 1250 et seq., N. III; 115 A.L.R. 1516, N. III.

■ Repression of a denial by the accused or his failure to dissent from the accusation is admissible even though he was in legal custody at the time. The mere fact that he was under arrest or in custody of the law does not alone render the testimony inadmissible. That fact deserves consideration as a circumstance under which the accusation was made in determining whether the accused was afforded an opportunity to enter a denial and whether he was naturally called on to do so, but this circumstance alone does not render such evidence incompetent. Spencer v. State, 20 Ala. 24; Raymond v. State, 154 Ala. 1, 45 So. 895; Hardwick v. State, 26 Ala.App. 536, 164 So. 107, certiorari denied, 231 Ala. 151, 164 So. 112. See also Smith v. State, 248 Ala. 363, 27 So.2d 495

(5); Phillips v. State, 248 Ala. 510, 28 So. 2d 542; Brooks v. State, 248 Ala. 628, 29 So.2d 4; 115 A.L.R. 1517, n. 2(b).

Under the pertinent rules above considered, the statements tending to incriminate the defendant, made by Williams in his presence, while being questioned by the law officers, and his silence or failure to contradict them, were properly admitted in evidence. The accusation was apparently understood by him and was such as naturally would call for a reply or a denial if not true, and, so far as appears from the record, the circumstances attending its rendition were such as afforded him full opportunity to speak and places the evidence clearly within the stated rules of admissibility.

We have adverted to the law controlling the incidents of the trial and will now notice the propositions raised in the dissenting opinion.

The dissent denounces the introduction of the evidence of the defendant's silence on accusation and claims that when thus accused by his companion Williams, the defendant was so circumstanced as that he was not called on for a reply. It is asserted that he had been "warned he did not have to speak" when so accused and, on this basis, the dissent seeks to rule out the evidence. The record clearly cannot be so interpreted and our careful review of it in consultation has convinced the rest of us that such a construction is wholly unwarranted and without foundation. There is no record justification for the assumption that, when Williams was narrating his version of the affair to the officers in the defendant's presence, either of the negro boys had been cautioned or warned in any manner. On the contrary, it appears that the narrative of Williams to the police officers accusing the defendant was made orally when Williams was being questioned and nothing is shown to warrant a conclusion that defendant had then been "warned" about anything. In fact, the record does not disclose the import of any written statement made by Williams or that he ever did confess to the officers and any assumption to the contrary is outside the record before us on which we are asked to review the proceedings on trial.

The only reference made to "warning" anyone is contained in a written statement of Jemison, who testified for the defendant, which statement was introduced by the State on rebuttal to impeach that witness's direct testimony.

Likewise, we are not impressed that error intervened in the introduction of the statement of Jemison, referred to in the minority opinion. No ruling was invited in regard to qualifying it and, as conceded, its obvious purpose was to impeach that witness's testimony. It was not incumbent that the court, ex mero motu, should have explained its competency. Nor will he be placed in error for not so doing. Cotney v. State, 248 Ala. 1, 26 So.2d 603(6). True, the review here is under the so-called automatic appeal statute, under the provisions of which this court, at its discretion, will consider the prejudicial effect of any *illegal* testimony and may reverse for its improper introduction even though no lawful objection or exception was made or other ruling invoked in regard thereto. This statute, however, is not controlling here because we are now dealing with the effect of *legal* testimony introduced without explanation of its competency, its purpose being obvious and no specific ruling being invoked in regard to limiting its scope.

On a studious consideration of the entire record, we have concluded that the trial proceeded without prejudicial error and the judgment must be affirmed.

Affirmed.

All the Justices concur except BROWN, J., who dissents.

BROWN, Justice (dissenting).

This appeal comes to this court under the automatic appeal statute. Code 1940, T. 15, § 382(10), 1945 Cumulative Pocket Part; Easley v. State, 246 Ala. 359, 20 So. 2d 519.

The general statute provides: "* * * the court must consider all questions apparent on the record or reversed by bill of exceptions, and must render such judgment as the law demands. * * *" Code 1940, Tit. 15, § 389.

The automatic appeal statute provides: "In all cases of automatic appeals the ap-

pellate court may consider, at its discretion, any testimony that was seriously prejudicial to the rights of the appellant, and may reverse thereon even though no lawful objection or exception was made thereto. * * * though no motion to that effect was presented in the court below. (1943, p. 219, § 10, appvd. June 24, 1943.)" Code 1940, Tit. 15, § 382(10), supra.

After such examination it clearly appears from the four corners of this record that what occurred is stated below.

The evidence offered by the state to prove the corpus delicti goes to show that the victim of the rape and her companion, Walter Ledlow, were discovered by three negro boys on the ground behind a hedge near a parked automobile from which the negro boys took a flashlight which they used in locating the victim and her companion. The car was parked and the prosecutrix and her companion were on or near the city dump just outside of the City of Anniston, Alabama. After an attempt to aid the victim and her companion in getting the car started and being unable to do so, the three negroes subsequently robbed both of said parties and two of the three forcefully ravished the prosecutrix.

It clearly appears that the confession of Williams was in the hands of the solicitor and was presented to the court during the examination of Dempsey to lay the predicate for proving the "implied inculpatory admission" arising from silence, and that the solicitor also had before him the confession of Jemison taken at the same time. Williams' confession was presented to the court, was offered in evidence and the court ruled against its admission. From said confessions of Williams and Jemison taken by the officers and reduced to writing the statement appears that these three negro boys were warned that they did not have to speak, but if they talked what they said could be used for or against them on trial in the law court. One who reads this record has got to shut his eyes and his intelligence to escape this conclusion.

While these three negro boys ranging from 15 to 19 years of age were "huddled" around the desk in the city jail in the presence of Dempsey and Montgomery, the arresting officers, white men and experienced officers of the law, after being cautioned by these officers, which negro boys of this class and age regard and speak of as "the law," Williams and Jemison confessed to participating in the robbery and Williams confessed to participating in having sexual intercourse with the prosecutrix. These confessions were reduced to writing by Montgomery and the written document, signed by Williams as his confession, embodying the statement that they were so cautioned they were not required to speak, was read over to them in the presence of the defendant. The confession of Williams embodied the statement that the defendant, as he started home from the scene of the crime, said he had sexual intercourse with the prosecutrix twice. The court, who was fully advised as to the contents of the written confession made by Williams and the statements therein, over defendant's objection, permitted the witness Dempsey to state that the defendant "did not open his mouth" to deny said statement.

The purpose of the question put to the witness Dempsey was to lay a predicate for an implied admission of guilt arising from defendant's silence. Weaver v. State, 77 Ala. 26. The law is settled that the essential elements of the predicate to the competency of silence as an implied admission is that the state must show, by evidence that the accused heard and understood the accusation, and that he remained silent in circumstances which *"naturally called for a reply"* and the party to be affected by it must be in a situation *"in which he would probably respond to it."* Jones v. State, 156 Ala. 175, 176, 180, 47 So. 100, 102; Rowlan v. State, 14 Ala.App. 17, 70 So. 953; Raymond v. State, 154 Ala. 1, 54 So. 895; Underhill's Criminal Evidence, 4th Ed., §§ 259, 260.

The defendant having been warned by "the law" that he did not have to speak, it is my opinion that the circuit court committed reversible error in overruling defendant's objection and in admitting this testimony.

After defendant had testified as a witness, denying his guilt and denying that he was present on the occasion of the commission of the crime and had offered evidence tending to prove an alibi and to show his

whereabouts other than the place of the crime, he introduced Jemison as a witness in his behalf, who on the direct examination, repudiated that part of his confession which tended to identify defendant as one of the three who participated in the robbery and one of the two who participated in the rape, and testified that he did not see defendant at the scene of the crime and didn't know him. On cross examination the solicitor was permitted to examine this witness as to every statement made in his confession to impeach his testimony given for this defendant and offered the written confession as a part of such evidence. The court permitted this evidence to go to the jury without limiting its effect to impeaching the testimony of witness Jemison given on the trial. This evidence was not competent, legal or material as going to show the defendant's guilt and it should have been limited by the court and the court should have made it plain to the jury that the impeaching evidence was not evidence against this defendant. As was observed by Mr. Justice Thomas in the case of Manning v. State, 217 Ala. 357, 359, 116 So. 360, 361, "The purpose or competency or limited effect of such evidence should be explained and made plain to the jury. * * *" See also Estes v. State, 140 Ala. 151, 37 So. 85.

This rule is a recognition that a trial judge who presides over a court of justice is not an automaton to be driven and moved by the objections of counsel who represent defendants on trial for their lives but he sits as the "mouth-piece of the law" and when justice requires, it is his duty to speak, and explain to the jury the intricacies touching the trial in respect to the law of evidence. It cannot be assumed that the jury knew that the impeaching evidence was not evidence against this defendant on his trial. There is certainly nothing in the case of Cotney v. State, 248 Ala. 1, 26 So. 2d 603, to relieve the court of the duty to see that this defendant received a fair and impartial in this case.

I am, therefore, of opinion that for these errors, keeping within the spirit and letter of the automatic appeal statute, the judgment of the circuit court should be reversed and the defendant granted a new trial.

Easley v. State, 246 Ala. 359, 20 So.2d 519; Davis v. State, 245 Ala. 589, 18 So.2d 282.

I, therefore, respectfully dissent.