88 So.2d 561

Jeremiah REEVES, Jr.

v.

STATE of Alabama.

3 Div. 751.

Supreme Court of Alabama.

June 21, 1956.

Peter A. Hall and Orzell Billingsley, Jr.,
Birmingham, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

STAKELY, Justice.

Jeremiah Reeves, Jr. (appellant), was indicted by the Grand Jury of Montgomery County for the offense of rape. He was tried before a jury upon a plea of not guilty and a plea of not guilty by reason of insanity. The trial resulted in a conviction. The case was appealed to this court where it was affirmed. Reeves v. State, 260 Ala. 66, 68 So.2d 14. On certiorari to the Supreme Court of the United States the judgment of conviction was reversed. Reeves v. State, 348 U.S. 891, 75 S.Ct. 214, 99 L.Ed. 700.

Appellant was arraigned on November 26, 1952, and on that date pleaded not guilty and not guilty by reason of insanity. When the case came up for trial the second time on May 30, 1955, appellant made a motion for permission to withdraw his former pleas in order to attack the legality of the indictment. A motion to quash the indictment was also filed. On May 30, 1955, a motion to quash the venire drawn on May 16, 1955, was filed. Appellant also filed a motion for the appointment of a lunacy commission. Another motion to quash the indictment was also filed. Appellant also filed a motion to set aside the entire jury box and to declare it void. Appellant also made a motion to allow the public to remain in the court room during the trial and further made a motion that the public be excluded only while the prosecutrix testified. All of the aforesaid motions were denied.

Testimony was taken before the court on the motion to quash the venire on the ground of systematic exclusion of Negroes from jury duty in Montgomery County. The motion was denied and the case went to trial. The jury returned a verdict of guilty and fixed the punishment at death. Counsel moved the court to set aside the verdict and the motion was denied. The court adjudged appellant guilty and sentenced him accordingly. It is from such judgment and sentence that this appeal has been taken.

We see no reason to set out the details of the alleged rape of the prosecutrix and the identification of the appellant as the guilty party. We have read the evidence very carefully in this regard and consider that there was clearly evidence from which the jury had the right to infer that the prosecutrix was raped and that this appellant was the one who perpetrated the act. It should be mentioned here that while on the first trial the questions of an

alleged confession and inculpatory statements were raised, these questions are not involved in the instant case. In other words the entire case for the State was testimony tending to show the act which constituted the crime, with the attendant circumstances, and the identification of appellant as the party committing the crime. The defendant denied that he committed the crime and there was testimony tending to show that he was at another place at the time the alleged crime was committed.

■■ I. On this trial of the case the appellant sought to withdraw his pleas of not guilty and not guilty by reason of insanity, which were entered on arraignment in order to permit him to attack the indictment on the ground of systematic exclusion of Negroes on the grand jury. The defendant was represented by counsel at the time the pleas were filed. The competency of counsel then representing defendant is not questioned. We find no error in the court's refusal to allow the aforesaid pleas to be withdrawn. Ordinarily an accused need not be rearraigned upon the second or subsequent trial of his case. We find that in most jurisdictions when a case has been reversed it is not necessary that the defendant be rearraigned. Thomas v. State, 17 Okl.Cr. 550, 190 P. 711; Hamit v. State, 42 Okl.Cr. 168, 275 P. 361; Steen v. State, 92 Tex.Cr.R. 99, 242 S.W. 1047; State v. Farrell, 223 N.C. 804, 28 S.E.2d 560; State v. Hewitt, 206 S.C. 409, 34 S.E.2d 764. In Alabama the courts have placed a limitation upon this rule but this limitation is not important under the facts presented in this case. In Alabama if the indictment is changed by amendment (by agreement) or its scope by the fact that the earlier conviction acts as an acquittal of a higher degree of the offense, the better practice is to rearraign the defendant prior to the second trial. Thomas v. State, 255 Ala. 632, 53 So.2d 340. In the case at bar the indictment has not been changed in any way and once having pleaded to the charge against him, we see no abuse of the court's discretion when the court refused to allow the defendant to reopen the pleading.

■ In Alabama there are certain statutory regulations with reference to objections to an indictment. In §§ 278, 279 and 286, Title 15, Code of 1940, there are provisions setting forth the method of attacking an indictment. Section 278 provides that the proper method is by plea in abatement. Section 279 provides that in all cases such a plea in abatement must be filed before the plea to the merits. The same is true in section 286. In Clark v. State, 239 Ala. 380, 195 So. 260, it is shown that under the procedural law of this state pleas in abatement must be filed before pleading to the merits or in bar and it is only where the court in its discretion allows pleas to the merits to be withdrawn that pleas in abatement can be filed. The principle here referred to was recently dealt with by the Supreme Court of the United States in Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. ——. In that case the appellant was indicted on February 19, 1953, and was presented to the court for arraignment on February 23, 1953. The arraignment was continued in order that counsel might be secured. In Louisiana the defendant is required to object to the grand jury before three judicial days after its term and in any case before arraignment. The Supreme Court of the United States in holding that the three day limitation was not a denial of due process, said that a motion to quash is normally a short, simple document, easily prepared in a single afternoon. It then appeared that the term of the grand jury which indicted the defendant expired March 2, 1953. The motion to quash the indictment was filed March 9, 1953, five days after the expiration of the term of the grand jury. Counsel contended that they had not been formally appointed until March 5, 1953. The Supreme Court of Louisiana held that counsel had been appointed on March 2 and the Supreme Court of the United States refused to overturn the findings of the Louisiana Court. It should be noted that in the Michel case, supra, the ground for challenge of the indictment was the systematic exclusion of Negroes from the grand jury. The state court found that question had been waived by the failure to file the motion to quash at the proper time. The Supreme Court of the United States did not disturb that ruling.

■ But there is more in this case than waiver by failure to make a timely assertion of an alleged right. As we understand the situation the question of the systematic exclusion of Negroes from the grand jury was raised on the first trial of the case and was before the Supreme Court of the United States. The reversal however by the Supreme Court of the United States was apparently based upon the erroneous introduction in evidence of the alleged confession. This is borne out by the citation of authorities on which the reversal is based. Reference to the opinion of this court in Reeves v. State, supra, as well as the record before the court on the former appeal, of which we take judicial notice, Alabama Water Co. v. City of Anniston, 227 Ala. 579, 151 So. 457, shows that the defendant filed a motion to quash the indictment by the grand jury panel on the ground that Negroes had been systematically excluded therefrom. The defendant called two members of the jury commission as his witnesses in support of the motion. This court held that there was no evidence to sustain the motion. In other words the appellant had full opportunity at that time to present the contention now made.

II. There is another basis which the appellant has advanced, because of which he should be allowed to withdraw his pleas of not guilty and not guilty by reason of insanity, in order that he might now attack the indictment against him. It appears to be the insistence of appellant that the indictment was based solely on evidence before the grand jury of an alleged confession obtained from appellant and since the confession has been held invalid, it is argued that there was no evidence before the grand jury on which it could lawfully return an indictment. We are not impressed with the contention here made.

■ On the first trial the motion to quash the indictment was based on two grounds, (1) that an invalid confession was used before the grand jury and (2) that Negroes were systematically excluded from the grand jury in Montgomery County. The court denied the motion. It is obvious, therefore, that on the first trial the indict-ment was attacked because of the use before the grand jury of an invalid confession, the change from the original attack now being that the invalid confession is the sole evidence on which the indictment was found. We think it is clear that the appellant had every opportunity to seek to quash the indictment for any reason growing out of the confession and that it comes too late for him now to complain of the invalidity of the indictment. Authorities supra.

Cases such as Allen v. State, 162 Ala. 74, 50 So. 279, cited by appellant, are not in point. In this line of cases the indictment did not meet the requirements of what is now § 419, Title 14, Code of 1940. This statute applies only to seduction cases. The present case is not a seduction case.

■ The original indictment is not in the present record because the court did not wish to prejudice the defendant by the verdict of guilty shown on the original indictment. The record shows that by stipulation of the parties a copy of the indictment was used and that the original indictment had a list of witnesses on the back thereof. The record certainly does not indicate that the sole evidence before the grand jury when it found the indictment was the alleged confession made by the defendant. Where there is some evidence before the grand jury tending to connect the accused with the offense charged, the lack of evidence upon some essential element of the offense is not a ground for quashing the indictment. Clark v. State, 240 Ala. 65, 197 So. 23, 30. Furthermore, " 'Where an investigation was made before the grand jury which returned the indictment, the sufficiency of the evidence adduced before that body cannot be raised on a motion to quash the indictment. * * *' " Clark v. State, supra, and cases cited therein. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406.

We say again that there was no error in the refusal of the circuit court to permit the withdrawal of the pleas so that the motion might be filed.

III. The appellant filed a motion to quash the venire on the ground that Negroes were systematically excluded from the jury rolls of Montgomery County. A considerable amount of testimony was heard by the court on this motion. Appellant introduced United States Census Reports indicating that in 1950 out of 40,144 males in Montgomery County over the age of twenty-one years, 25,021 were white and 15,123 were non-white. However, the lack of proportional representation of Negroes on the jury does not constitute discrimination under the facts in this case. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Kennedy v. State, 186 Tenn. 310, 210 S.W. 2d 132, certiorari denied 333 U.S. 846, 68 S.Ct. 659, 92 L.Ed. 1129; People v. Price, 371 Ill. 137, 20 N.E.2d 61, certiorari denied 308 U.S. 551, 60 S.Ct. 94, 84 L.Ed. 463; Thomas v. State of Texas, 212 U.S. 278, 29 S.Ct. 393, 53 L.Ed. 512.

The Board of Jury Supervisors of Montgomery County is composed of the two Circuit Judges, Judge Walter B. Jones and Judge Eugene W. Carter, the Clerk of the Circuit Court, John R. Mathews, the Probate Judge, David E. Dunn and the Sheriff of Montgomery County, Sim Butler. Without going into great detail the testimony may be summarized as showing that the Board and the various members thereof had gone through the county in search of a list of qualified jurors. They obtained the list of names from the Association of Colored People as well as from the telephone directory, city directory and the voters list. The Board got names from stores or wherever people congregate and names were secured from everyone possible. A list had been obtained from the old Civic Betterment Society, civic clubs and labor organizations. Six or seven Negroes were on the venire selected to try the case at bar. There is no way of knowing from the cards taken from the jury box whether a name was that of a white or a colored man, except that the fact might be determined sometimes from the address on the card. The testimony showed that some negroes have served on grand juries in Montgomery. The method of drawing and selection of juries was as follows: Fifty names were drawn from the jury box. These persons are summoned and the names of those appearing are put in a hat. The hat is then covered by a handkerchief and eighteen names are drawn out in open court. There was nothing on the card to distinguish white from colored persons. The board considered that it was necessary to consider both the reputation and education of prospective jurors and that an honest effort was made to see that names of competent jurors were placed in the box, whether they were white or colored. There was no discussion as to whether a man was white or colored when his name was being considered for inclusion in the jury box. Voting qualification was not necessarily the criterion for jury duty and some of the jurors were not voters. Any person wanting to be on the jury list need only contact a member of the board and his name would be considered. The board tried not to put the name of anyone on the jury list who was dead, convicted of a crime involving moral turpitude, was a drunkard, or a narcotic addict. There was testimony showing that one list of suggested names came from the head of the N. A. A. C. P. and names were received from people calling in, writing in or visiting. Social groups had not been consulted but civic clubs had been consulted and a number of representative colored people had been consulted for recommendations. One of the judges testified that whenever he saw a Negro sitting on a jury he tried to contact that Negro for more names. There was proof that the supervisors had never refused or failed to put persons on the roll by reason of his color, race or creed. There was testimony by one of the supervisors that he did not know of any venires where more than ten Negroes were listed and he did not remember whether there were any Negroes on the grand jury which indicted the appellant. He testified that the box was last refilled in January 1955, after this case had been argued before the Supreme Court of the United States. The names of leading Ne-

groes were given who were consulted for the purpose of securing the names of Negroes to serve on the juries. There was testimony also from attorneys practicing before the bar who had more or less familiarity with the make up of juries in criminal cases and that they were accustomed in recent years to seeing Negroes serving on grand and petit juries in Montgomery County. A former sheriff and a present bailiff testified that a good many grand juries had Negroes on them and that there had been as many as four in some of them and that Negroes had been seen sitting on juries in criminal cases and that he remembered one jury with five Negroes on the jury. In short, the testimony for the State was all to the effect that there was no discrimination on account of race, color or creed when it came to selection of those to serve on juries of Montgomery County. The appellant put a number of Negroes on the stand as witnesses. These witnesses testified that they had never been called for jury duty or that they had been called but once. Many of these witnesses were pullman porters who are out of town a considerable part of the time. All of the persons put on the stand by the appellant, according to their testimony, had spent very little, if any time around the court house.

In the case of Thomas v. State of Texas, 212 U.S. 278, 29 S.Ct. 393, 53 L.Ed. 512, the Supreme Court of the United States in finding no evidence of discrimination stated that the evidence showed that those responsible for obtaining jurors had fairly and honestly attempted to carry out their duties.

The court heard all of this testimony orally before it and found that there was no discrimination against Negroes and no systematic exclusion of Negroes from service on juries in Montgomery County because of race, creed or color.

A careful consideration of the evidence satisfies us that the great weight of the evidence shows that there was no systematic exclusion of Negroes from the juries in Montgomery County. We consider that the court reached a correct conclusion and acted properly in denying the motion to quash the venire.

■ IV. It is insisted that the remarks of the solicitor in asking the court to present certain questions to the jury were prejudicial to the rights of appellant. The solicitor asked the court, "Inquire of the venire whether any were members of the N. A. A. C. P.?" The solicitor also stated that it was his information that the case was being financed by that group. It is not necesary that the questions asked the jury venire bring forth answers which provide a ground for challenge for cause. It is proper to have questions which might bring out matters which would enable the party to select an unbiased and unprejudiced jury. Without question attorneys may wish to omit certain persons from the jury even though they might not be able to challenge the jurors for cause. Wide latitude is allowed in the questions asked voir dire in order to give counsel the opportunity for intelligent selection of the final twelve men who will make up the jury. There was no error in this ruling of the court. Rose v. Magro, 220 Ala. 120, 124 So. 296; Burgess v. Singer Mfg. Co., Tex.Civ.App., 30 S.W. 1110; Redus v. State, 243 Ala. 320, 9 So.2d 914, certiorari denied 318 U.S. 774, 63 S.Ct. 771, 87 L.Ed. 1143, rehearing denied 318 U.S. 802, 63 S.Ct. 852, 87 L.Ed. 1166; §§ 63, 64, Title 30, Code of 1940.

■ V. When the case reached the stage for taking testimony on the merits, the court excluded the general public from the trial. The court permitted the following persons to remain in the room, the defendant, counsel representing the parties, the court officers, members of the press, radio, television or other news gathering services, uniformed officers, members of the bar, defendant's pastor, members of the family and relatives of the defendant. The Alabama Constitution provides that the court may in its discretion exclude from the court room all persons not necessary in the conduct of a trial in cases of this sort. § 169, Constitution of Alabama of 1901. The legislature has also provided for this same exercise of discretion. § 320, Title 15, Code of 1940. The court was clearly not in error

in its ruling in this regard. Similar acts have been upheld in many courts throughout this country. Attention is called to the following authorities in addition to the foregoing constitutional and statutory provisions hereinabove noted. Scott v. State, 249 Ala. 304, 30 So.2d 689; Wade v. State, 207 Ala. 1, 92 So. 101; Keddington v. State, 19 Ariz. 457, 172 P. 273, L.R.A.1918D, 1093; Robertson v. State, 64 Fla. 437, 60 So. 118; Reagan v. United States, 9 Cir., 202 F. 488, 44 L.R.A.,N.S., 583; Melanson v. O'Brien, 1 Cir., 191 F.2d 963; Sawyer v. Duffy, D.C., 60 F.Supp. 852; Benedict v. People, 23 Colo. 126, 46 P. 637; Commonwealth v. Blondin, 324 Mass. 564, 87 N.E.2d 455; Moore v. State, 151 Ga. 648, 108 S.E. 47; People v. Swafford, 65 Cal. 223, 3 P. 809; Sallie v. State, 155 Miss. 547, 124 So. 650; Baker v. Utecht, 8 Cir., 161 F.2d 304; State v. Callahan, 100 Minn. 63, 110 N.W. 342.

 VI. Upon proof that two witnesses on the former trial, who were at that time stationed at the Maxwell Field Air Base in Montgomery, Alabama, were absent from the jurisdiction of the trial court, one of them being in Minnesota and the other in England, the trial court permitted their testimony on the former trial to be read into the record. In this state upon the proper proof of the absence from the jurisdiction of witnesses who have previously given sworn testimony before a tribunal of competent jurisdiction, the earlier testimony may be introduced. Lovejoy v. State, 32 Ala.App. 110, 22 So.2d 532, certiorari denied 247 Ala. 48, 22 So.2d 537; Pruitt v. State, 92 Ala. 41, 9 So. 406; Burton v. State, 107 Ala. 68, 18 So. 240; Lett v. State, 124 Ala. 64, 27 So. 256; Percy v. State, 125 Ala. 52, 27 So. 844; Jacobi v. State, 133 Ala. 1, 32 So. 158, appeal dismissed 187 U.S. 133, 23 S.Ct. 48, 47 L.Ed. 106; Wilson v. State, 140 Ala. 43, 37 So. 93. There was no error in this ruling of the court.

VII. There were some written charges refused the appellant. They were affirmative in nature and under the evidence in the case, were properly refused.

As is our duty, we have carefully examined the entire record to see if there was any error prejudicial to the appellant even though not called to our attention by briefs of counsel. We find no such error.

It is our conclusion that the sentence and judgment of the lower court must be upheld.

Affirmed.

All the Justices concur.