## STATE v. ADRIAN B. SCHMIT.

139 N. W. (2d) 800.

January 21, 1966—No. 39,079.

*Ray Flader* and *Louise Miller O'Neil,* for appellant.

*Robert W. Mattson,* Attorney General, *William B. Randall,* County Attorney, and *Henry W. Pickett, Jr.,* and *Phyllis G. Jones,* Assistant County Attorneys, for respondent.

ROGOSHESKE, JUSTICE.

Appeal from an order denying defendant's motion for judgment of acquittal or in the alternative a new trial.

Defendant was brought to trial in the District Court of Ramsey County upon an information charging him with the crime of sodomy as follows:

"That on the 8th day of November, in the year 1962, at said county, Adrian Benedict Schmit, then and there being, did wrongfully, unlawfully, feloniously and carnally know a female person, to wit: one Carole Ann Bergeron, by the mouth and tongue of him, the said Adrian Benedict Schmit, contrary to the form of the statute in such case made and provided, * * *."[1]

The jury found defendant guilty of indecent assault, submitted as a lesser and included offense over his objection.

After the jury was sworn and the state concluded its opening statement, a motion was made on behalf of the state to exclude witnesses and spectators from the courtroom. Over defendant's objection, the following order was made:

"I think in excluding the witnesses from the courtroom I better exclude everybody so long as the State agrees. Who knows who a witness might be. Anyway, because of the nature of the case, we'll exclude the public. Everyone in the courtroom except the jury, Counsel and the defendant and the witness on the stand, will be excluded from the courtroom. * * * Of course, this does not include counsel. Members of the bar are not excluded unless they are to be witnesses in the case."

---

[1] Minn. St. 617.14.

At a later point in the proceedings, the court clarified its order:

"* * * [L]et the record show that the Court granted the State's motion to exclude the public because of the nature of the testimony, * * * but the record should show that in excluding the public the Court has made an exception of all members of the bar and makes an exception of any representative of the press."

Two questions raised by the assignment of errors are decisive of the appeal, namely: Did the order excluding the public violate defendant's constitutional right to a public trial, and was it error to submit the offense of indecent assault as a lesser and included offense of the crime of sodomy? We are constrained to answer both in the affirmative.

■ Minn. Const. art. 1, § 6, includes a provision that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial." [2] The pertinent language and apparent scope of U. S. Const. Amend. VI are identical.[3] The right to a public trial can scarcely be regarded as less fundamental and essential to a fair trial than the right to assistance of counsel, also granted by the Sixth Amendment. Despite the absence of a specific holding, recent decisions of the United States Supreme Court tend to erase any lingering doubts that the right to a public trial, no less than the right to counsel, is entitled to protection from state invasion by the due process clause of the Fourteenth Amendment.[4] This likelihood,

---

[2] "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defense."

[3] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense."

[4] In re Oliver, 333 U. S. 257, 272, 68 S. Ct. 499, 507, 92 L. ed. 682, 693;

together with the identity of language, bestows special significance upon Federal cases as we seek to interpret and apply our constitutional provision.

Based upon consideration of the history and development of the concept as one rooted in the common law, the right to a public trial, whether guaranteed by constitutional or statutory provision, is universally regarded by state and Federal courts as basic and substantial and the language declaring it as mandatory. Although so regarded, the term "public" is relative and not defined in either constitution. Hence, courts uniformly refuse to view the right to a public trial as absolute in the sense that everyone who wishes to attend may do so. Rather, (for the purposes of this kind of case) it is generally viewed as a limited privilege accorded to an accused, subject to the inherent power of the court to restrict attendance as the conditions and circumstances reasonably require for the preservation of order and decorum in the courtroom and to protect the rights of parties and witnesses.[5] Accordingly, it has been held that restrictions on attendance may be imposed because of the limited seating capacity of the courtroom,[6] to prevent overcrowding,[7] or in the interests of health or for sanitary reasons.[8] Order and decorum of the court must be preserved and a judge may exclude anyone guilty of misconduct,[9] pro-

Mapp v. Ohio, 367 U. S. 643, 656, 81 S. Ct. 1684, 1692, 6 L. ed. (2d) 1081, 1090; Gideon v. Wainwright, 372 U. S. 335, 339, 83 S. Ct. 792, 794, 9 L. ed. (2d) 799, 802; Pointer v. Texas, 380 U. S. 400, 406, 85 S. Ct. 1065, 1069, 13 L. ed. (2d) 923, 927; Estes v. Texas, 381 U. S. 532, 588, 85 S. Ct. 1628, 1662, 14 L. ed. (2d) 543, 583. See, also, United States ex rel. Bruno v. Herold (N.D.N.Y.) 246 F. Supp. 363. But see, Gaines v. Washington, 277 U. S. 81, 48 S. Ct. 468, 72 L. ed. 793.

[5] Annotations, 156 A. L. R. 265 and 48 A. L. R. (2d) 1437; Annotation, 4 L. ed. (2d) 2128.

[6] See, Davis v. United States (8 Cir.) 247 F. 394, 395, L. R. A. 1918C, 1164; People v. Jelke, 308 N. Y. 56, 123 N. E. (2d) 769, 48 A. L. R. (2d) 1425.

[7] Myers v. State, 97 Ga. 76, 25 S. E. 252.

[8] People v. Miller, 257 N. Y. 54, 60, 177 N. E. 306, 308. See, People v. Jelke, 308 N. Y. 56, 63, 123 N. E. (2d) 769, 772, 48 A. L. R. (2d) 1425, 1431, and cases therein cited.

[9] United States ex rel. Orlando v. Fay (2 Cir.) 350 F. (2d) 967; Myers v.

vided no more are excluded than necessary to maintain order.[10] It is everywhere conceded that minors deserve special consideration and may be excluded from the courtroom in trials of a salacious nature.[11] Where it appears that minors are unable to testify competently and coherently before an audience because of embarrassment or fright, temporary exclusion of the public is permissible.[12] Our prior decisions hold that an adult witness may also be protected by temporary exclusion of the public when it appears that embarrassment prevents a full recital of the facts.[13]

In discussing the extent to which the court may go in excluding spectators, in State ex rel. Baker v. Utecht, 221 Minn. 145, 149, 21 N. W. (2d) 328, 331, it was observed:

"* * * It is only under very unusual circumstances that the preservation of order in the courtroom or of public morals may justify the temporary exclusion of some part or all of the general public. Where the evidence, however, relates to indecent or immoral matters, persons of immature years may usually be temporarily excluded. Likewise, for the purpose of alleviating the embarrassment of a witness, especially one of immature years, who is called upon to testify to matters of a disgusting and salacious character, it may be justifiable to exclude spectators temporarily. It is difficult to conceive of a situation where, in the interest of public morals, it is justifiable to exclude, without any exceptions, the *entire* public, even temporarily."

The question squarely presented on this appeal is whether all spectators may be indiscriminately excluded during the entire trial, solely because of the obscene nature of the crime and of the testimony likely to be

State, *supra;* Lide v. State, 133 Ala. 43, 31 So. 953. See, Davis v. United States, *supra.*

[10] Davis v. United States, *supra.*

[11] State v. Adams, 100 S. C. 43, 84 S. E. 368; Minn. St. 631.04.

[12] Hogan v. State, 191 Ark. 437, 86 S. W. (2d) 931; Grimmett v. State, 22 Tex. App. 36, 2 S. W. 631; Callahan v. United States (9 Cir.) 240 F. 683; Geise v. United States (9 Cir.) 262 F. (2d) 151. See, also, United States v. Kobli (3 Cir.) 172 F. (2d) 919, 924.

[13] State v. Callahan, 100 Minn. 63, 110 N. W. 342; State ex rel. Baker v. Utecht, 221 Minn. 145, 21 N. W. (2d) 328, certiorari denied, 327 U. S. 810, 66 S. Ct. 971, 90 L. ed. 1034.

presented, without infringing on defendant's fundamental rights. In considering the question, we are mindful that the court below, in deference to consideration of public decency and morality, was activated by the highest motives, for the record before us indeed reveals the sordid details of the most extreme type of vulgar, scandalous, and revolting conduct. However, we must be equally mindful that our answer necessarily transcends the disposition of this particular case.

The question is one on which courts are not agreed, both with respect to what constitutes a public trial and the permissible extent of exclusion.

Of the two opposing views, a minority interprets the guarantee of a public trial less rigorously. They define "public trial" as one that is "not secret." [14] Some courts have held valid a statutory exclusion of the public in all trials of an indecent nature.[15]

A majority of the courts protect an accused's rights more scrupulously, interpreting "public trial" broadly in its ordinary commonsense meaning as being a trial which the general public is free to attend. The doors of the courtroom are expected to be kept open.[16] "The public includes persons of all classes." [17] These cases have reversed convictions obtained at trials where the public was excluded solely on account of the salacious nature of the crime or testimony likely to be given.[18] In these cases the ex-

---

[14] See, Keddington v. State, 19 Ariz. 457, 459, 172 P. 273, 274, L. R. A. 1918D, 1093; Callahan v. United States, *supra;* Benedict v. People, 23 Colo. 126, 46 P. 637; State v. Croak, 167 La. 92, 94, 118 So. 703, 704; Note, 49 Col. L. Rev. 110, 113.

[15] Scott v. State, 249 Ala. 304, 30 So. (2d) 689; Reeves v. State, 264 Ala. 476, 88 So. (2d) 561; Aaron v. State, 271 Ala. 70, 122 So. (2d) 360; Ex parte Rudolph, 276 Ala. 392, 162 So. (2d) 486.

[16] People v. Hartman, 103 Cal. 242, 245, 37 P. 153, 154.

[17] People v. Byrnes, 84 Cal. App. (2d) 72, 78, 190 P. (2d) 290, 294. See Davis v. United States (8 Cir.) 247 F. 394, 395: "* * * [A] public trial is a trial at which the public is free to attend."

[18] People v. Yeager, 113 Mich. 228, 71 N. W. 491; Neal v. State, 86 Okla. Cr. 283, 192 P. (2d) 294; Thompson v. People (Colo.) 399 P. (2d) 776; People v. Hartman, *supra;* People v. Byrnes, *supra;* Tanksley v. United States (9 Cir.) 145 F. (2d) 58, 10 Alaska 443, 156 A. L. R. 257; United States v. Kobli (3 Cir.) 172 F. (2d) 919; State v. Keeler, 52 Mont. 205, 156 P. 1080;

clusionary orders varied in scope, some excepting members of the bar and friends and relatives of the defendant, [19] while some excepted members of the press but refused to admit friends.[20] Regardless of the exceptions to the order, the action in excluding the public has been condemned.[21]

The arguments advanced by the proponents of spectator exclusion appear to be based upon these considerations:

"* * * [T]he undesirable effect on public morals of an open trial of a salacious case; the unnecessary embarrassment to witnesses caused by the presence of an audience; and the influence the presence of the public has on both attorneys and jury, encouraging histrionics in the one and undermining the impartiality of the other." [22]

Each of these reasons alone or in combination, it is urged, justifies excluding all who are not directly interested, and no infringement of defendant's rights result where his friends, relatives, and members of the press and bar are permitted to remain in the courtroom.

In our opinion, these arguments tend to dilute the force of the plain meaning of the words "public trial." It must be acknowledged that there is a vast difference between a trial from which everyone but a special class of persons is excluded and one which everyone except a designated few is free to attend.[23]

Excluding adult spectators is a dubious protection of public morality in light of the morbid and debased curiosity which beckons many, particularly in light of the details and probable innuendoes included in extensive and prominent coverage by news media.

---

People v. Jelke, 308 N. Y. 56, 123 N. E. (2d) 769, 48 A. L. R. (2d) 1425. See, also, Davis v. United States, *supra.*

[19] People v. Jelke, *supra.*

[20] United States v. Kobli, *supra.*

[21] A Michigan statute empowering trial judges to exclude the public in trials of a salacious nature was held unconstitutional in People v. Yeager, *supra.* A similar statute in Utah was held applicable only to civil cases in State v. Beckstead, 96 Utah 528, 88 P. (2d) 461.

[22] See, Note, 49 Col. L. Rev. 110, 116.

[23] People v. Jelke, 308 N. Y. 56, 66, 123 N. E. (2d) 769, 774, 48 A. L. R. (2d) 1425, 1433.

"* * * Moreover whatever may have been the view in an earlier and more formally modest age, we think that the franker and more realistic attitude of the present day toward matters of sex precludes a determination that all members of the public, the mature and experienced as well as the immature and impressionable, may reasonably be excluded from the trial of a sexual offense upon the ground of public morals." [24]

Mere embarrassment of adult witnesses with no showing of inability to testify is not a sufficient reason to defeat such an overbalancing constitutional right. The order and decorum of the court, undoubtedly endangered by the presence of prurient-minded or sensation-seeking spectators, can usually be maintained by the vigilant exercise of the trial judge's authority as well as by indiscriminate exclusion.

Permitting the courtroom doors to be open only to members of the bar and press (as was done in this case) and to relatives and friends of defendant (as allowed in most cases of general exclusion) cannot in our opinion be equated with a trial which the public is free to attend. There is no guarantee that the news media will give such complete, accurate, and impartial reporting as is necessary to safeguard defendant's rights or protect against judicial oppression, especially in cases lacking news value.[25] Allowing friends and relatives and members of the bar to attend is no assurance of their presence. Nor are we persuaded that members of

---

[24] United States v. Kobli (3 Cir.) 172 F. (2d) 919, 923. See, also, People v. Jelke, 308 N. Y. 56, 65, 123 N. E. (2d) 769, 773, 48 A. L. R. (2d) 1425, 1432: "The demands of public morality do not * * * justify judicial nullification of the right of public trial, even in cases of an obscene or indecent nature * * * ."

[25] United States v. Kobli (3 Cir.) 172 F. (2d) 919, 923: "* * * [I]t has been suggested that the end of publicity sought to be achieved will be accomplished by permitting newspaper reporters to be present * * * without the indiscriminate admission of members of the public who may come only out of idle curiosity. It may well be that in most cases this would be sufficient to insure that acts of judicial misconduct would receive public attention. The law, however, is chary of putting all its eggs in one basket. The apparently idle spectator may turn out to be the one person who directs public attention to acts of judicial oppression which are overlooked by the more seasoned but sometimes blasé professional gatherer of news."

the bar, relatives, and friends can assume either to represent or speak for the entire community interest in securing that kind of judicial administration which is fair both to the accused and the prosecution.[26]

In our opinion the constitutional mandate contemplates that an accused be afforded all possible benefits that a trial open to the public is designed to assure. Unrestricted public scrutiny of judicial action is a meaningful assurance to an accused that he will be dealt with justly, protected not only against gross abuses of judicial power but also petty arbitrariness.[27] The presence of an audience does have a wholesome effect

---

[26] People v. Jelke, 308 N. Y. 56, 66, 123 N. E. (2d) 769, 774, 48 A. L. R. (2d) 1425, 1433: "The statutory requirement of a public trial is not satisfied simply by allowing relatives and friends of defendant's choosing to be present. * * * A defendant may not have any relatives or friends available or willing to attend the trial, and, even if he has, such a handful is not by any means sufficiently representative of the public to provide the protection to an accused and the 'contemporaneous review in the forum of public opinion' that a public trial is designed to assure and afford."

State v. Holm, 67 Wyo. 360, 387, 224 P. (2d) 500, 510: "It may well happen that a person might be arrested and tried for a crime * * * who has no acquaintances, no relatives and no friends in the community. Hence, only the presence of the public generally could insure him a public trial to which he is rightfully entitled."

State v. Keeler, 52 Mont. 205, 215, 156 P. 1080, 1082: "Why should an exception be made in favor of a friend of the defendant while the taxpayer, who is interested to know how the public servants—the judge, the county attorney, the sheriff, *etc.*—perform their work, is excluded? And why make an exception in favor of members of the bar who are not interested in the trial of the case. Is it because lawyers are presumed to be immune against the influence of testimony 'of a very immoral and disgusting nature,' or is it because members of the legal profession enjoy some special privilege not open to the laymen? The bare statement of such propositions is their own refutation."

[27] United States v. Kobli (3 Cir.) 172 F. (2d) 919, 921: "* * * [T]he common law concept of a public trial had come to be regarded as an essential guarantee against any attempt to employ the courts as instruments of persecution. The knowledge that every criminal trial was subject to contemporaneous review in the forum of public opinion was regarded as an effective restraint on possible abuse of judicial power."

People v. Jelke, 308 N. Y. 56, 62, 123 N. E. (2d) 769, 771, 48 A. L. R.

on trustworthiness since witnesses are less likely to testify falsely before a public gathering.[28] Further, the possibility that some spectator drawn to the trial may prove to be an undiscovered witness in possession of critical evidence cannot be ignored.[29] It is not unrealistic even in this day to be-

---

(2d) 1425, 1430: "In contrast to secret inquisitional techniques, which are alien to a free society, publicity serves as a safeguard against unjust persecution of an accused and goes far toward insuring him the fair trial to which he is entitled."

State v. Smith, 90 Utah 482, 491, 62 P. (2d) 1110, 1115: "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions * * *."

State v. Keeler, 52 Mont. 205, 218, 156 P. 1080, 1083: "* * * [T]he purpose of this constitutional provision is * * * [p]rimarily * * * for the benefit of the accused—to afford him the means of proving a fact with reference to some question of procedure which it may become necessary for him to prove in order to protect his rights, and to see that he is not unjustly condemned."

State v. Haskins, 38 N. J. Super. 250, 255, 118 A. (2d) 707, 709: "* * * [A] public trial serves as a very salutary restraint upon gross abuses of the judicial power, upon lesser evils, such as indolence or a petty arbitrariness on the part of the judge * * *."

See, also, People v. Hartman, 103 Cal. 242, 244, 37 P. 153, 154.

[28] People v. Jelke, 308 N. Y. 56, 62, 123 N. E. (2d) 769, 772, 48 A. L. R. (2d) 1425, 1430: "Publicity has also been deemed to play an important role in assuring 'testimonial trustworthiness', 'by inducing the fear of exposure' of testimony falsely given * * *."

State v. Haskins, 38 N. J. Super. 250, 255, 118 A. (2d) 707, 709: "* * * [A] public trial serves as a very salutary restraint * * *—by exposing witnesses to the eyes and the ears of the public—upon any tendency toward mendacity on their part."

[29] Tanksley v. United States (9 Cir.) 145 F. (2d) 58, 59: "One of the main purposes of the admission of the public is the reasonable possibility that persons unknown to the parties or their counsel, but having knowledge of the facts, may be drawn to the trial * * *."

United States v. Kobli (3 Cir.) 172 F. (2d) 919, 921, 923: "It was also thought that if trials were public they might come to the attention of important witnesses unknown to the parties who might voluntarily come forward to testify * * *.

\* \* \* \* \*

lieve that public inclusion affords citizens a form of legal education and hopefully promotes confidence in the fair administration of justice.[30]

We are thus led to the conclusion that an order such as the one in this case, excluding everyone from the trial of a criminal case except members of the bar and press, solely upon the ground of the obscene nature of the crime and anticipated testimony, exceeds the power of the court to limit attendance and violates defendant's constitutional right to a public trial. It follows that a new trial must be granted even though defendant has not shown any specific prejudice. A violation of fundamental rights implies prejudice. To require an affirmative showing, often difficult if not impossible, would impair or destroy the right, and thereby render the constitutional guarantee illusory.[31]

■   While the evidence clearly supports defendant's conviction of the crime of indecent assault, that offense is not a lesser and included offense of the crime of sodomy.

Minn. St. 1961, § 631.14, in effect at the time of the alleged criminal acts, provided in part:

"Upon an indictment for an offense consisting of different degrees, the

---

"* * * [I]t is entirely possible that the apparently idle spectator may prove to be the unknown witness vital to the defense of the accused."

People v. Jelke, 308 N. Y. 56, 63, 123 N. E. (2d) 769, 772, 48 A. L. R. (2d) 1425, 1430: "* * * [B]ringing notice of the proceedings to the attention of possible witnesses who may not be known to the parties."

[30] United States v. Kobli (3 Cir.) 172 F. (2d) 919, 921: "It was also thought that * * * conduct of trials in public would enable the spectators to learn about their government and acquire confidence in their judicial remedies."

State v. Keeler, 52 Mont. 205, 218, 156 P. 1080, 1083: "The people are interested in knowing * * * how their servants—the judge, county attorney, sheriff and clerk—conduct the public's business."

See, also, State v. Haskins, 38 N. J. Super. 250, 255, 118 A. (2d) 707, 709.

[31] Davis v. United States, *supra;* State v. Haskins, 38 N. J. Super. 250, 256, 118 A. (2d) 707, 710, and cases therein cited; State v. Keeler, 52 Mont. 205, 214, 156 P. 1080, 1082: "The Constitution guarantees to a defendant charged with crime, whether innocent or guilty, a public trial, and when the right is denied him, he has not had a fair and impartial trial within the meaning of the Constitution, and all that can be required of him is that he make known the fact of the denial, and the law imputes prejudice."

jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto * * *. *In all other cases, the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment."* (Italics supplied.) [32]

The crime of sodomy is defined by Minn. St. 617.14 as follows:

"A person who carnally knows in any manner any animal or bird, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge; or attempts sexual intercourse with a dead body, is guilty of sodomy * * *."

Defendant was convicted under Minn. St. 617.08, which provides:

"Every person who shall take any indecent liberties with or on the person of any female, not a public prostitute, without her consent expressly given, and which acts do not in law amount to rape, an attempt to commit a rape, or an assault with attempt to commit a rape * * * shall be guilty of a felony."

The essential elements of the crime of indecent assault or the taking of indecent liberties are: (1) An assault, which must have as one of its essentials force or violence; [33] (2) against one "not a public prostitute"; (3) "without her consent expressly given."

The state relies upon State v. McLeavey, 157 Minn. 408, 196 N. W. 645, and State v. West, 39 Minn. 321, 40 N. W. 249, to support its posi-

---

[32] This section has been superseded by Minn. St. 609.04, subd. 1 (L. 1963, c. 753, § 609.04, subd. 1), which provides: "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A lesser degree of the same crime; or

"(2) An attempt to commit the crime charged; or

"(3) An attempt to commit a lesser degree of the same crime; or

"(4) *A crime necessarily proved if the crime charged were proved."* (Italics supplied.)

The notes of the Advisory Committee on Revision of the Criminal Code state that this provision was intended to restate existing law, citing State v. McLeavey, 157 Minn. 408, 196 N. W. 645.

[33] State v. Nelson, 199 Minn. 86, 93, 271 N. W. 114, 118; Johnson v. Sampson, 167 Minn. 203, 208 N. W. 814, 46 A. L. R. 772.

tion that the offense is necessarily included in the crime of sodomy. In McLeavey, the accused was indicted and tried for attempting to commit the crime of carnal knowledge upon a female child under the age of 14. On appeal, the question was whether assault in the third degree and indecent assault are lesser and included offenses of the crime of carnal knowledge. We held they were for the reason that it was impossible to commit the crime charged without committing an assault, whether it be indecent or simple. The crime of carnal knowledge upon a female under 14 years (and thus incapable of consent) necessarily includes proof of (1) an assault, (2) against a female not a public prostitute,[34] (3) without her consent expressly given—precisely the elements required to prove the lesser offense of indecent assault. The West case is similarly distinguishable.

Our decisions following the clear language of the statute require that to submit a lesser offense it must be shown that the offense charged (the greater offense) cannot be committed without necessarily committing the lesser offense.

It is not essential in proving sodomy to prove an assault. Also, it is conceivable that a husband and wife could be convicted of sodomy even though the proof established consent.[35] Whether a female is a "public prostitute" is of no moment in a sodomous act. Hence it cannot be said that if sodomy is proved, an indecent assault is necessarily proved.

We therefore must hold that it was error to submit the crime of indecent liberties as a lesser and included offense of the crime charged.

We deem it unnecessary to pass upon other questions raised by defendant except to note that evidence of prior sodomous acts was admissible.[36]

Reversed and new trial granted.

---

[34] Her age alone is inferential proof of this fact.

[35] "* * * [Sodomy] is the unnatural and prohibited ways of satisfying sexual desires * * *. Thus husband and wife, if violating this statute, could undoubtedly be punished * * *." State v. Nelson, 199 Minn. 86, 94, 271 N. W. 114, 118.

[36] State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167; State v. Arradondo, 260 Minn. 512, 110 N. W. (2d) 469.