**Caliph WASHINGTON, Petitioner,**

v.

**William C. HOLMAN, as Warden, Kilby Prison, Montgomery, Alabama, Respondent.**

**Civ. A. No. 2145–N.**

United States District Court
M. D. Alabama, N. D.
July 6, 1965.

Fred Blanton and Morel Montgomery, Birmingham, Ala., for petitioner.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for respondent.

JOHNSON, District Judge.

The petitioner, Caliph Washington, by leave of this Court, filed with this Court on December 3, 1964, his application for a writ of habeas corpus. Petitioner was, and is, presently being held in custody by William C. Holman, Warden of Kilby Prison, State of Alabama, Montgomery, Alabama, under a judgment made and entered by the Tenth Judicial Circuit of Alabama on December 9, 1959. This

judgment was entered upon a conviction by a jury for the offense of murder, and Washington's punishment was fixed by the jury as death.[1] The judgment and sentence was affirmed by the Supreme Court of Alabama on October 4, 1962. Washington v. State, 274 Ala. 386, 148 So.2d 206. Washington has remained in the custody of the Warden of Kilby Prison at Montgomery, Alabama, awaiting the execution of the sentence since its affirmance by the Supreme Court of Alabama. During this time there have been thirteen reprieves, which delayed the execution of the death sentence. A clemency hearing was held on September 8, 1964. Before this hearing there were eight reprieves, two of which were requested by Washington. After the hearing there were five reprieves; none at the request of Washington. Finally, on December 1, 1964, the Governor of the State of Alabama denied clemency and ordered the electrocution of Washington to proceed as last scheduled for 12:01 a. m., Friday, December 4, 1964. Washington, through his counsel, attempted to present to the Supreme Court of Alabama a petition for a stay of execution so that certain federal constitutional questions could be presented to that Court by way of a petition for a writ of error coram nobis. The Supreme Court of Alabama refused the requested stay on December 2, 1964. This Court entered a formal order on December 3, 1964, staying the execution in this case. Upon the filing of the petition with this Court, and after ordering the execution stayed pending a determination by this Court of the issues presented, the Warden was ordered to show cause why a writ of habeas corpus should not be issued. Pursuant to this order and on January 8, 1965, the Attorney General for the State of Alabama representing the respondent Warden in this case, filed his return and answer to the Court's order to show cause.

Upon the pretrial hearing conducted in this case on February 9, 1965, it was stipulated and agreed by and between the parties that Caliph Washington had exhausted the remedies available to him in the courts of the State of Alabama as required by Title 28, § 2254, United States Code, and was entitled to a hearing in this Court on the merits of his case. It was further stipulated by and between the parties that this cause be submitted without the taking of any oral testimony, said submission to be upon the pleadings, including the State court trial record and the transcript of the evidence, and the briefs of the parties. As reflected by the pretrial order of this Court, this submission is upon the following issues:

(1) Whether or not Washington has been subjected to cruel and unusual punishment, prohibited by the Eighth Amendment to the Constitution of the United States, by having been granted thirteen reprieves, such reprieves having been granted on several occasions approximately twenty-four to thirty-six hours prior to the time set for his execution;

(2) Whether or not the reception into evidence of admissions against interest and purported confessions obtained after arrest by police officers at a time when Washington was not represented by counsel, when he had not been offered counsel, had not been informed he could have counsel, and when he did not knowingly waive the assistance of counsel, was a denial of Washington's constitutional rights as guaranteed by the Sixth Amendment and the Fourteenth Amendment to the Constitution of the United States;

(3) Whether or not the reception of testimony from a previous trial into evidence on the second trial was a denial of Washington's right to be

---

1. The indictment in this case was returned on September 12, 1957. The original trial was held on October 7, 1957; a verdict of guilty, with punishment at death, was returned on October 8, 1957. On appeal to the Supreme Court of Alabama, the conviction and sentence was reversed and the cause remanded. Washington v. State, 269 Ala. 146, 112 So.2d 179.

confronted by the witness against him and his right of cross-examination to the extent that his constitutional rights, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, were violated; and

(4) Whether or not petitioner's constitutional right of due process was violated by the trial court's receiving into evidence a purported confession, or confessions, when the testimony as to the voluntary nature of such confession was heard before the jury.

In the early morning hours of Friday, July 12, 1957, a police officer of the City of Lipscomb, Alabama, received a fatal wound from a bullet fired from his own pistol. On Sunday, July 14, 1957, the defendant, a 17-year-old Negro boy, able "to read and write a little," was arrested by a Mississippi officer in the State of Mississippi. He had the pistol of the deceased in his possession. He was returned to Alabama by an Alabama police officer. The officer who returned Caliph Washington from the State of Mississippi testified on behalf of the State. He testified that before Washington's return to Alabama Washington confessed that he shot the police officer with the officer's pistol, while he, Washington, "was trying to get away from the police." After Washington had been returned to the State of Alabama and while incarcerated prior to indictment and without the benefit of counsel, a written confession was obtained from Washington by "Chief" Wilton H. Hogan, Chief Deputy Clyde Morris, Criminal Investigators W. C. Dean and C. E. Walker, together with the Deputy Coroner, J. W. Thompson. This confession was admitted in evidence upon the trial of the case over objection by Washington's counsel. The objection, as made, was as follows:

"MR. EDWARDS: We object to it as not being shown to be a voluntary, not shown to be in the words of the defendant, not shown that he was advised that he could have had or should have had counsel present at the time that the statement was made; he was not given the benefit of counsel and advice of counsel before requiring him to answer the questions and to make the statement made on that occasion."

The evidence upon this submission further reflects that during the trial of this case the testimony of a witness by the name of Furman Jones was admitted in evidence by reading a transcript of his testimony given upon the former trial. This testimony is to the effect that Washington had admitted to him, while they were riding a bus from Alabama to Mississippi, that he had shot and killed a police officer. This evidence, admitted by reading the transcript of Jones' testimony, was admitted over the objection of Washington's counsel; the basis of this objection was that the defense counsel had learned certain facts which would now enable him to effectively cross-examine the said Furman Jones. The basis for the trial court's admission of the testimony of Furman Jones in this manner was upon the theory that Jones was a nonresident of the State of Alabama and that his sworn testimony taken on the previous trial for the same offense was admissible provided a proper predicate was laid. The proper predicate in such instances, according to the Supreme Court of Alabama, Washington v. State, 274 Ala. 386, 148 So.2d 206, is proper proof of the absence of the witness from the jurisdiction of the court. As related by the Supreme Court, the State laid its predicate in the instant case in the following manner:

"The state offered in evidence a letter from the Chief of Police in Jonesville, South Carolina, to the effect that Furman Jones had been released from the Army and that his mailing address was Box 465, Jonesville, South Carolina. The trial court properly sustained objection to this letter on the ground that it was hearsay. Thereafter, Mr. McAdory, Clerk of the Bessemer Division of the Circuit Court of Jefferson

County, took the witness stand and identified the subpoena docket in the case then on trial and verified that Furman Jones' address was listed as Box 465, Jonesville, South Carolina. McAdory further identified an official sheriff return which indicated that a subpoena was sent to Furman Jones at the above address on November 20, 1959. The subpoena docket and sheriff's return were introduced as state exhibits. Thereafter, Mr. Brown, a deputy sheriff of the county, testified that he himself had put the subpoena in an envelope addressed to Jones at the above-stated address."[2]

For the reasons hereafter appearing, this Court has concluded that the only issues that it is necessary and appropriate to discuss in disposing of this case are issues numbered 2 and 3 as above outlined.

 The courts of this country long ago became concerned with practices which often produce confessions and with the convictions which are based upon these confessions. United States v. McNabb, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and the cases cited therein. The courts have recognized and continue to recognize that the mere fact that a confession is made while the accused is in the custody of the police does not in and of itself render the confession inadmissible. Even though the McNabb doctrine has not yet been made applicable to state courts and state procedure, see Edwards v. Holman, 342 F.2d 679 (5th Cir. 1965), the proposition that the due process clause of the Fourteenth Amendment to the Constitution of the United States must be complied with by all courts and investigative agencies is basic in our law. A far-reaching application of this doctrine was made by the Supreme Court

in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, wherein the Court held that the Fourteenth Amendment requires that the states, in order to comply with due process, make counsel available to defend indigent accused in state criminal prosecutions. The philosophy of Gideon has raised other serious constitutional questions, particularly the one that is involved in the case now presented, namely, at what stage of the proceedings is a defendant entitled to the assistance of counsel. The cases of Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L. Ed. 377 (1940); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L. Ed.2d 114 (1961), and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), provide a general answer to this question. These cases, however, do not provide the answer where a defendant has made a confession of the offense or offenses for which he is charged prior to counsel being appointed, or prior to an opportunity to retain counsel. Two of the leading cases in this area were decided in 1957 by the Supreme Court of the United States, Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, and Cicenia v. LaGay, 357 U.S. 504, 78 S. Ct. 1297, 2 L.Ed.2d 1523. In the Crooker case the Court held that California's failure to honor accused's requests during a period of police interrogation to consult with a lawyer, as yet unretained, did not violate the Fourteenth Amendment. In this case the Court placed emphasis upon Crooker's age, intelligence and education, plus the police statements to him that he did not have to answer any questions and that his refusal to answer would not prejudice him. The Court concluded that the evidence did not show that any advantage was taken of

2. Justice Coleman of the Alabama Supreme Court dissented from the affirmance of the second conviction in this case, with the following statement: "I do not think that a proper predicate was laid for the admission, on the second trial, of the testimony given by Furman Jones on the former trial, and, therefore, am

of opinion that the court erred in allowing his testimony to be admitted on the instant trial. As I understand the opinion of the majority, they hold that Jones' former testimony laid its own proper predicate. I, therefore, respectfully dissent."

Crooker to the extent that his constitutional rights had been violated. The Court reached the same conclusion in Cicenia, where the defendant was denied an opportunity to confer with the lawyer whom he had already retained. In this connection, see also Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), which case cites Spano v. State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). From these cases it can be fairly concluded that in each instance it depends upon the "totality of the circumstances" under which the confession has been obtained when an inquiry is being conducted concerning whether the admission of the confession in evidence violates due process. A case very close in point to the case now presented—and one this Court feels is controlling—is Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.[3] In the Escobedo case, the defendant was a 22-year-old of Mexican extraction. He was arrested shortly after the murder for which he was being held. During this first period of detention he made no statement and was released upon a writ obtained by his lawyer. Several days later he was re-arrested and was not permitted to contact his lawyer. Escobedo was not advised by the police of his right to remain silent, and after persistent questioning by the police, he made a damaging statement to an assistant state's attorney, which was admitted upon the trial of the case. The United States Supreme Court, reversing the conviction, held that in the context of the case, the time the interrogation was conducted before the petitioner was formally indicted was not controlling. The Court stated:

> "It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment."

Concerning the right to the assistance of counsel, the Court wrote:

> "We hold, therefore, that, where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, 83 S.Ct., at 795, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

> \* \* \* \* \* \*

> " \* \* \* to the extent that Cicenia or Crooker may be inconsistent with the principles announced today, they are not to be regarded as controlling."

In the Escobedo case, the accused, as stated above, was a 22-year-old of Mexican extraction; here, Caliph Washington was a 17-year-old Negro youth; in the Escobedo case no one advised the defendant of his constitutional rights. In this case the only advice given Washington was that set out by the officers in their writing the confession; this was to the effect, "I have not been mistreated in any way since I was arrested, nor promised any help or reward to make this statement, and I know it may be used in court at my trial for killing a policeman." [4]

---

3. The argument that the Escobedo case is limited to the peculiar facts of that case is not sound. See Collins v. Beto, 5th Cir., June 18, 1965, 348 F.2d 823.

4. Page 92 of the transcript.

There is no question in this case that Washington was not represented by counsel. He had not been offered counsel. He had not been informed and was never informed that he could have counsel, and he did not knowingly waive the assistance of counsel. In the Escobedo case, Escobedo had become the "accused." The purpose of the interrogation was to build a case against him. In this case, the investigation had centered upon Washington. The police officers already had the oral statement that Washington had made to Grimes while still in Mississippi. The investigation, therefore, had ceased to be a general investigation of an "unsolved crime" such as was true in Spano v. State of New York, supra; to the contrary, the investigation had ended insofar as determining who the defendant was to be and had centered upon one particular individual—Washington. Under the circumstances of this particular case, Washington's constitutional right to counsel was not lost because he did not request or insist upon counsel prior to making the confession to the State officers. The constitutional right to counsel does not arise from the request for counsel, but comes into being by reason of the circumstances of each particular case. Collins v. Beto, supra; Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70; Lee v. United States (5th Cir. 1963), 322 F.2d 770, 777; and People v. Dorado, California, 40 Cal.Rptr. 264, 394 P.2d 952. What is now said and held in this case is not to be interpreted as meaning that all statements of an incriminatory nature, or confessions made by an uncounseled accused, are inadmissible in evidence. The circumstances of each case must be controlling. In this connection, see the recent case of Cephus v. United States, C.C.A., D.C., June 21, 1965, 352 F.2d 663, where the facts of the case did not render the "uncounseled utterances" inadmissible. The circumstances of this case were such that Washington's constitutional right to counsel was in existence prior to the interrogation that resulted in the confession that was admitted in evidence upon the trial of this case over the objection of his counsel. This Court concludes, therefore, that the admission in evidence by the trial court of the written confession obtained by the State officers after arrest, during incarceration, at a time when Washington was not represented by counsel, at a time when he had not been offered counsel, and at a time when he had not been informed he could have counsel, and when he did not knowingly waive the assistance of counsel, was a denial of the rights of Washington under the Sixth Amendment to the Constitution of the United States as the same is made applicable to the State of Alabama by the due process clause of the Fourteenth Amendment.

As to the second of the issues deemed necessary for discussion in this case, it appears that the Alabama rule on admissibility of prior testimony of a witness in a criminal case is the same as that used in the federal courts. In this connection, see Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128, cert. denied 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701, and Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. The rule in Alabama, as stated by the Alabama Supreme Court, is well settled that when a witness is a nonresident, or has removed from the State permanently, or for an indefinite time, his testimony taken on any previous trial for the same offense may be offered and admitted in a subsequent trial provided a proper predicate is laid. Reeves v. State, 264 Ala. 476, 88 So.2d 561; see also the other cases cited by the Alabama Supreme Court in Washington v. State, 274 Ala. 386, 388, 148 So.2d 206. However, the rule is equally clear that in the absence of a proper predicate, prior testimony of a witness is inadmissible. Wiggington v. State, 205 Ala. 147, 87 So. 700; Wilson v. State, 140 Ala. 43, 37 So. 93; Sims v. State, 139 Ala. 74, 36 So. 138. The record as presented to this Court discloses that the only evidence before the trial court concerning the whereabouts of Furman Jones (the witness whose testimony was

admitted by reading from the transcript of the previous trial) at the time of the second trial was Furman Jones' statement taken on the first trial that his home was in South Carolina. State Supreme Court Justice Coleman in his dissent was correct, in the opinion of this Court, in concluding that no proper predicate was laid for the admission of the former testimony of Furman Jones.

 The right of confrontation and cross-examination in criminal trials is a basic constitutional right guaranteed to citizens of the United States. Sixth Amendment, United States Constitution. This right is also guaranteed by the Constitution of the State of Alabama. Article I, Section 6, Constitution of Alabama, 1901. The obvious objective of this constitutional provision is to prevent depositions and affidavits from being used against a defendant in lieu of a personal examination and cross-examination of the witness, in which instance the defendant has an opportunity not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the defendant and the jury so that his demeanor and his conduct while testifying may also be judged and weighed. The exception to the general rule concerning confrontation and cross-examination is based upon considerations of public policy. The exception, however, as observed by the courts that have recognized and applied it, including the Supreme Court of Alabama in the Washington case, must be used only in such a manner as to guarantee due process by the laying of a proper predicate to show that the witness is, in fact, unavailable. The attempt on the part of the State of Alabama to lay a predicate in this case only through the use of the witness's testimony upon the former trial was insufficient to meet the constitutional requirements. This Court concludes, therefore, that the reception into evidence in this capital case of the testimony of a witness from a previous trial was a denial of Caliph Washington's right to be confronted by the witness against him and of his right of cross-examination as guaranteed by the Sixth Amendment to the Constitution of the United States as that amendment is made applicable to the State of Alabama by the due process clause of the Fourteenth Amendment.

In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the verdict of guilty rendered on the 9th day of December, 1959, and the judgment of conviction and the sentence pronounced thereon in the Circuit Court of the Tenth Judicial Circuit of Jefferson County, Alabama, in Alabama State court case No. 21929, styled, The State of Alabama v. Caliph Washington, be and each is hereby declared void and invalid as being in violation of Caliph Washington's constitutional rights as guaranteed by the Constitution of the United States.

It is further ordered that said verdict of guilty, judgment of conviction and sentence pronounced thereon, be and each is hereby set aside.

It is the further order, judgment and decree of this Court that Caliph Washington, the petitioner in this case, be discharged from the custody of the State of Alabama and from the custody of William C. Holman, Warden of Kilby Prison, Montgomery, Alabama, to the extent that such custody is or may be pursuant to the conviction and judgment of the Circuit Court of the Tenth Judicial Circuit of Alabama pronounced in State court case No. 21929, entitled, The State of Alabama v. Caliph Washington, on the 9th day of December, 1959. In ordering Caliph Washington to be discharged from custody based upon said unconstitutional conviction, this Court does not enjoin the State of Alabama authorities, if they see fit to do so, from reprosecuting and, if appropriate, punishing Washington in such a manner that complies with the constitutional requirements.

It is ordered that Caliph Washington's discharge from said custody be not later than 10 a. m., July 9, 1965.

It is further ordered that the costs incurred herein be and they are hereby taxed against the respondent, William C. Holman, Warden, for which execution may issue.