William C. **HOLMAN**, As Warden Kilby Prison, Montgomery, Alabama, Appellant,

v.

Caliph **WASHINGTON**, Appellee.

No. 23039.

United States Court of Appeals Fifth Circuit.

Aug. 8, 1966.

---

David W. Clark, Asst. Atty. Gen., Montgomery, Ala., Richmond M. Flowers, Atty. Gen. of Alabama, for appellant.

Orzell Billingsley, Jr., Birmingham, Ala., David H. Hood, Jr., Bessemer, Ala., Charles Morgan, Jr., Atlanta, Ga., Robert L. Carter, New York City, Erskine Smith, Birmingham, Ala., for appellee.

Before JONES and GEWIN, Circuit Judges, and HUNTER, District Judge.

GEWIN, Circuit Judge:

Upon petitioner's application for a writ of habeas corpus, in the United States District Court for the Middle District of Alabama, 28 U.S.C.A. §§ 2241, 2254, the court held that the admission into evidence of a confession obtained without the presence of counsel and the admission into evidence of the testimony of a witness from a previous trial without the laying of a proper predicate violated petitioner's constitutional rights under the Sixth and Fourteenth Amendments and ordered the petitioner to be discharged from custody. Washington v. Holman, D.C., 245 F.Supp. 116 (1965). This is an appeal from that order of the District Court granting the writ of habeas corpus.

On July 12, 1957, police officer, James B. Clark, of Lipscomb, Alabama, received a fatal wound from a bullet fired from his own pistol. Two days later the petitioner, a 17 year old Negro boy, able "to read and write a little," was arrested in Mississippi by a Mississippi officer and the pistol of the deceased was found in his possession. An Alabama police officer testified that while escorting the petitioner back to Alabama, he confessed to shooting the police officer in an attempt "to get away from the police." Thereafter, while incarcerated in Alabama, prior to indictment and without benefit of counsel, a written confession was obtained from him.

Petitioner was indicted by the Grand Jury of Jefferson County, Alabama, on a charge of murder in the first degree on September 12, 1957. Being unable to employ counsel, the court appointed counsel to represent him. He was tried on October 8, 1957, and convicted of murder in the first degree and sentenced to death, but the conviction was reversed by the Alabama Supreme Court and the cause remanded on February 12, 1959. Washington v. State, 269 Ala. 146, 112 So.2d 179.[1] On re-trial, December 9, 1959, pe-

---

1. In reversing the conviction the court held that it was error to admit a statement made by the defendant into evidence where such statement had been used by the prosecutor, during his cross-examination of defendant, and defendant had been denied the right to examine the statement before being questioned concerning its contents.

titioner was found guilty as charged and on appeal the conviction and sentence were affirmed on October 4, 1962. Washington v. State, 274 Ala. 386, 148 So.2d 206. After exhausting his state remedies as required by 28 U.S.C.A. § 2254, he petitioned the District Court for a writ of habeas corpus on December 3, 1964. The court in granting the writ found that petitioner was convicted in violation of his constitutional rights to the assistance of counsel and to confrontation and cross-examination of the witness against him.[2]

It is the contention of appellant that the District Court erred in finding the conviction of petitioner unconstitutional. First, appellant contends that the admission into evidence of petitioner's confession made without counsel, offer of counsel or waiver of counsel did not violate his constitutional right to the assistance of counsel. Second, appellant contends that the proper predicate was laid for the admission into evidence of testimony of a witness taken at a prior trial and therefore petitioner's constitutional right to confrontation and cross-examination of the witness against him was not violated.

I

The only reference in the record to the facts surrounding the confession is in the opinion and order of the District Court Judge. The opinion reads:

"After Washington had been returned to the State of Alabama and while incarcerated prior to indictment and without the benefit of counsel, a written confession was obtained from Washington by 'Chief' Wilton H. Hogan, Chief Deputy Clyde Morris, Criminal Investigators W. C. Dean and C. E. Walker, together with the Deputy Coroner, J. W. Thompson."

This confession was admitted into evidence over the objection of petitioner's counsel, that it was obtained without benefit of counsel.[3]

The District Court in determining the admissibility of the confession concluded that the Escobedo [4] case was controlling. In *Escobedo* the Supreme Court reversed the conviction of a 22 year old defendant of Mexican extraction and held that damaging statements made by the defendant during interrogation without being permitted to contact his lawyer were inadmissible at trial. The often quoted language of *Escobedo*,

"[T]hat, where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the sus-

2. At the pretrial hearing it was stipulated and agreed by the parties that the court would inquire into petitioner's allegedly unconstitutional detention by examining the pleadings, the transcript of the evidence and the briefs of the parties upon the following issues:

 1. whether petitioner has been subjected to cruel and unusual punishment, by having been granted thirteen reprieves;

 2. whether reception into evidence of petitioner's confession obtained while petitioner was not represented by counsel violated his right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments;

 3. whether the reception of testimony from a previous trial into evidence on the second trial was a denial of petitioner's right to confrontation and cross-examination of the witness against him and thus a violation of the Sixth and Fourteenth Amendments; and

 4. whether or not petitioner's constitutional right of due process was violated by the trial court's receiving into evidence his confession when the testimony as to the voluntary nature of such confession was heard before the jury.

In ruling on the constitutionality of petitioner's detention, the District Court concluded that only issues two and three were necessary and appropriate for discussion in disposing of the case.

3. Counsel's objection to the admittance of the confession was as follows:

"Mr. Edwards: We object to it as not being shown to be a voluntary, not shown to be in the words of the defendant, not shown that he was advised that he could have had or should have had counsel present at the time that the statement was made; he was not given the benefit of counsel and advice of counsel before requiring him to answer the questions and to make the statement made on that occasion."

4. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1965).

pect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment * * * and that no statement elicited by the police during the interrogation may be used against him at a criminal trial,"

was the guiding principle in the District Court's determination that petitioner's confession was inadmissible.

A more recent case, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, June 13, 1966), established standards for in-custody interrogation, among which are: Prior to *any questioning*, the person *must* be advised that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights provided the waiver is made *voluntarily, knowingly*, and *intelligently*. The prosecution may *not* use any statement stemming from interrogation of the defendant unless these procedural safeguards *or* other *fully effective* measures are employed. Thus *Miranda* being a further exploration into the problem of self-incrimination as dealt with in *Escobedo* supports the District Court's conclusion as to the non-admissibility of petitioner's confession if the principles announced in those cases were not limited in their application retrospectively.

■ Subsequent to the District Court's decision, the Supreme Court decided Johnson v. State of New Jersey, 384 U.S. 719 (86 S.Ct. 1772, 16 L.Ed.2d 882, June 20, 1966), which precludes us from applying the principles of *Escobedo* and *Miranda* in judging the admissibility of petitioner's confession. The Supreme Court concluded that their holdings in

the two cases should not be applied retroactively but should apply only to cases commenced after those decisions were announced. Since the ruling in *Escobedo* is available only to persons whose trials began after June 22, 1964, and *Miranda* after June 13, 1966, petitioner is excluded; since his trial began on October 8, 1957, many years before these cases were decided.

But the Court emphasized that even though *Escobedo* and *Miranda* were to be given only prospective application, case law on coerced confessions is available for persons whose trials have already been completed. Thus the *Johnson* decision does not preclude persons from invoking the safeguards established in *Escobedo* and *Miranda* as part of an involuntariness claim. The failure of the state to meet these standards would be one factor to be considered by the court in determining whether the resulting confession was involuntary. Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). Thus the totality of the circumstances which produced the confession must be examined by the court, and only after weighing all the factors involved could a decision be made as to the involuntariness of a confession.

■ As heretofore stated, one of the chief contentions of the petitioner is that the confession obtained by the police was elicited when he was without counsel and had not been offered free counsel. So far as the record discloses the issue of voluntariness or involuntariness of the confession was not presented to the District Court or decided by it. However, interrogation without the presence of counsel may be considered as one factor (among many others) tending to prove involuntariness. In view of our decision with respect to the admission into evidence of the testimony of the absent witness appearing later in this opinion, plus the fact that the voluntariness issue does not appear to have been an issue in the District Court, we find it unnecessary

and inappropriate to make a determination of that issue.[5] See Marion v. Harrist, 363 F.2d 139 (5 Cir. 1966).

Since *Escobedo* and *Miranda* cannot be retroactively applied to this case, we must reverse the finding of the District Court that the confession was inadmissible under the standards of *Escobedo*.

## II

The second claim of error brought to us for decision involves whether a proper predicate was laid for the admission into evidence of testimony of a witness at a prior trial.

The Alabama Supreme Court has stated that when a witness is absent from the jurisdiction, his testimony taken on any previous trial for the same offense may be offered and admitted in a subsequent trial provided a proper predicate is laid. Reeves v. State, 264 Ala. 476, 88 So.2d 561 (1956). In such a situation the requirements that must be met before the testimony is admissible, Reeves v. State, supra; Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837 (1950), are four-fold: (1) Proper proof of absence from the jurisdiction; (2) Substantially the same issues and parties in the subsequent trial; (3) Testimony of witness must have been given under oath; and (4) The party against whom the witness was offered had an opportunity to test the credit of the testimony by cross-examination.[6]

The witness, Mr. Furman Jones, around whom this controversy revolves, testified at petitioner's initial trial. He was placed under oath and on direct examination stated that while he was returning by bus to his army camp, Fort Hood, Texas, the petitioner sat down in the seat beside him. While occupying adjoining seats, petitioner told him that he had killed a policeman in Alabama. Upon conclusion of the direct examination, defense counsel cross-examined the witness. Almost two and a half years later on petitioner's re-trial for the same crime, first degree murder, the state introduced the transcript of Mr. Jones' testimony, which was admitted into evidence by the trial court upon the contention by the State that the witness was a nonresident of Alabama and not subject to compulsory process.

From this statement of facts it is clear that the chief requirement which is being questioned is the one requiring proper proof of permanent absence from the jurisdiction. At the second trial the court admitted into evidence the following proof that Mr. Jones was not presently within the State of Alabama and thus unavailable: the testimony of Mr. Jones at the first trial on October 8, 1957, that he lived in South Carolina[7] and the testimony of Mr. Jack Brown, Deputy Sheriff of Jefferson County that he mailed a subpoena to Mr. Jones by regular mail at the address shown on the subpoena docket sheet, which listed his address as Box 465, Jonesville, South Carolina.[8] The trial court found that

5. In addition we make no decision regarding issue number four contained in the District Court's order on pretrial hearing. See note 2, supra. That question has not been presented to us for determination. The record indicates that the jury was present during the trial judge's evidentiary hearing on the admissibility of the confession. In light of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in which the Court held that voluntariness must be determined in a proceeding separate and apart from the jury, the petitioner's claim may have merit.

6. The rule as to absence is succinctly stated in Wyatt v. State as follows:

"The testimony of a witness at a former trial is admissible in a second trial when at the time the witness is dead, under disability, *is permanently absent* from the State, or becomes unavailable by reason of claim of privilege at the second trial." (Emphasis added.)

7. This testimony consisted of one question and one answer:
"Q. You live in South Carolina?
"A. Yes, sir."

8. We presume this address was obtained from a letter received from Robert J. Gregory, Chief-of-Police, Jonesville, S. C. who stated that Furman Jones was living

the above evidence constituted proper proof that the witness was without the jurisdiction of the court and not available to the State as a witness. Thus the court found that the witness was absent from the jurisdiction on the date of the trial, December 9, 1959, because over two years earlier he had testified that he lived in South Carolina, and that the docket sheet listed his purported address as being Box 465, Jonesville, South Carolina.[9]

■ We think the above evidence is most inadequate as proof of the whereabouts of witness Jones. The state has merely indicated a possibility that Mr. Jones is beyond the borders of Alabama, and such indication certainly falls short of the requirement of diligent search for the witness and proper proof of absence from the jurisdiction. Not only has the state offered insufficient proof that the witness is in South Carolina and not Alabama, it has not shown that it exercised due diligence in its efforts to discover the presence of the witness. See Lovejoy v. State, 32 Ala.App. 110, 22 So.2d 532 (1945),[10] cert. den. 247 Ala. 48, 22 So.2d 537; McCoy v. State, 221 Ala. 466, 129 So. 21 (1930).

It is common knowledge that people are constantly changing their places of abode. They move from state to state for many reasons, some of which are connected with employment or other business undertakings. In this case the strongest evidence offered by the State was the fact that this witness had stated two and a half years before that he lived

in South Carolina. He was a soldier at the time. Moreover, it is also true that some witnesses will cooperate with parties litigant to the extent that compulsory process is not the only means of securing their attendance in court. Indeed, the arrangements by which the attendance of Jones was procured at the first trial, although he was in the army and stationed in Texas, is an example showing the attendance of a witness without compulsory process. In our view, the State of Alabama was required to show greater diligence than was shown with respect to obtaining the attendance of the witness, and showing that he was beyond the jurisdiction of the court.

Also we take notice of the fact that on appeal to the Alabama Supreme Court the court was not unanimous in its affirmance of petitioner's conviction, but Judge Coleman in his dissent concluded that the proper predicate for the admission of this witness' testimony was not laid.

■ The constitutional right of confrontation and cross-examination to the extent guaranteed by the Sixth and Fourteenth Amendments cannot be sidestepped because it happens to be convenient for one of the parties. The importance of this right is emphatically demonstrated by the existence of the numerous safeguards designed for its protection. In addition to the Sixth Amendment of the United States Constitution, the right is also guaranteed by the Constitution of the State of Alabama, Arti-

---

in Jonesville and that his mailing address was Box 465, Jonesville, S. C. This letter was offered into evidence by the State and upon the objection of defense counsel, the trial court refused its admission.

9. This witness was in the army stationed in Texas at the time of the first trial. Arrangements were made to secure his presence. In its decision affirming the conviction following the second trial, the Supreme Court of Alabama stated:
"Jones appeared in the first trial through the cooperation of the United States Army even though he was then stationed in Texas."

10. The following is from the opinion in Lovejoy v. State:
"Also, if a witness had been examined in a former criminal case before a competent tribunal and subsequently dies, or if not dead, becomes insane; or *if after diligent search* he is not to be found within the jurisdiction of the court, or if that which is equivalent be shown, that he has left the *state permanently* or for such an indefinite time that his return is contingent and uncertain, it is admissible to prove the substance of the testimony he gave formerly. Mitchell v. State, 114 Ala. 1 and 2, 22 So. 71." (Emphasis added.)

**624**

cle I, Section 6, Constitution of Alabama, 1901. See also Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. It is only when *all* of these safeguards have been complied with, particularly with reference to the case before us, the requirement of proper proof that the witness is unavailable, that the admission of his prior testimony does no violence to protected constitutional rights.

The constitutional right of confrontation could never have any greater meaning than when a person is on trial for his life under an indictment charging first degree murder. In this case the likelihood that such a penalty would be imposed was not remote or highly speculative in view of the fact that Washington had been given the death sentence on his first trial.[11]

 Therefore, we affirm the decision of the District Court that a proper predicate was not laid for the admission into evidence of the absent witness' testimony taken at a prior trial; and thus, petitioner was convicted in violation of the Sixth and Fourteenth Amendments.

In accordance with the foregoing we affirm the Order, Judgment and Decree of the District Court insofar as it relates to the use of the testimony of the absent witness.

Modified and affirmed.

---

11. Counsel for Washington strenuously objected to the use of the testimony of the absent witness. He emphasized the fact that counsel had been appointed only ten days before the first trial. There is a strong intimation that witness Jones had not been available for questioning before trial. It was pointed out that certain facts with respect to the conversation between Jones and Washington had come to the attention of counsel which facts were unknown at the former trial. The following is from the objection:

"Now if he were here and if he testified in the same manner that he did before counsel feels that without ques-

tion in certain respects I could impeach him."

\* \* \* \* \*

"As a matter of fact, I would think that in all probability his testimony is the most damaging testimony that appears anywhere in this record, and we feel that in a case of this character, of this importance, that to deprive the defendant, who has appointed counsel now and who had appointed counsel at that time, to deprive him of the right to cross-examine that witness in the light of recently discovered facts, recently discovered witnesses and recently discovered evidence, would work a hardship on the defense."