**UNITED STATES of America ex rel.
John OLIVER**

v.

**Alfred T. RUNDLE, Supt.**

**Misc. No. M-69-50.**

United States District Court
E. D. Pennsylvania.

April 3, 1969.

Vincent J. Ziccardi, Defender Association of Philadelphia, Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty., by Joseph J. Musto, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION AND ORDER

WOOD, District Judge.

Relator was found guilty by a jury of burglary and rape on July 6, 1967. His motions for arrest of judgment and new trial were dismissed, and he was sentenced to a term of not less than 10 nor more than 20 years on each sentence, the terms to run concurrently. After exhausting his state remedies,[1] relator has applied to this Court for a writ of habeas corpus. The sole question raised is whether relator was denied his right to confrontation of witnesses against him under the Sixth Amendment when the trial court admitted the testimony of a juvenile co-defendant at the preliminary hearing after a showing that such co-defendant was not available to testify in person at the trial. Although we consider the issue raised to be a very serious one, after a full examination of the state proceedings[2] in this case, we have concluded that relator's petition must be denied.

To fully understand the substance of relator's claim it is first necessary to review the relevant history of the case and the applicable legal standards. Relator and three juveniles allegedly forced the prosecutrix to have sexual intercourse against her will on January 1, 1967. After the alleged attack, the prosecutrix went to the police and relator was arrested shortly thereafter. A preliminary hearing was held on January 6, 1967 in the County Court of Philadelphia. The following colloquy occurred at that hearing:

"Mr. Bernsee [district attorney]: Your Honor, at this time this is a preliminary hearing as to Mr. Oliver. The Commonwealth rests, and asks you to hear the case concerning the other gentlemen—the juveniles.

\* \* \* \* \* \*

"The Court: The District Attorney has now concluded the preliminary hearing as to Mr. Oliver, and he wants to now proceed with the juveniles.

\* \* \* \* \* \*

"Mr. Cortese [counsel] for Mr. Oliver]: Your Honor, I think that since allegedly everything happened here involves all of these defendants, and is supposed to have happened at the same time, I think that in the interest of Justice the defendant [i. e. relator] should be present at every moment of this proceeding.

"The Court: All right, as far as the preliminary hearing, he has been heard. However, if you want me to continue the evidence in this case in so that it may be used in regards to John Oliver, and give you a chance to cross-examination, I will do so. I realize this is a serious charge and I will do that at your request.

"Mr. Cortese: I so request.

1. Judgment of sentence affirmed by the Pennsylvania Superior Court September 12, 1968, Commonwealth v. Oliver, 213 Pa.Super. 146, 148–149, 245 A.2d 464 (1968). Allocatur was denied November 22, 1968.

2. On February 3, 1969, we entered an order directing the Prothonotary of the Court of Quarter Sessions of Philadelphia County to transmit to this Court "the record of all proceedings in Commonwealth v. John Oliver, Nos. 2260–61, January Sessions 1967." We have fully examined this record, which includes the transcript of post-trial proceedings, and have not deemed it necessary to hold a hearing because we think all the relevant facts of this case appear on the record.

"The Court: All right, we will hear what the juveniles have to say, and then you may want to ask some questions." *

The Court then proceeded to hold a hearing for the juveniles who were allegedly relator's accomplices. The first hearing concerned one Wilbert Herring, one of relator's co-defendants. Mr. Cortese, relator's counsel, cross-examined Herring, after he was cross-examined by the District Attorney, as to the events that occurred and the parts played by Herring and relator. Subsequently, Oliver was bound over to the Grand Jury, and Herring was declared a juvenile delinquent and sent to the Youth Study Center at Fort Mifflin, but escaped on March 8, 1967.

By the time of relator's trial, Herring had still not been apprehended. The Commonwealth introduced evidence to show that it was not responsible for his escape, and that it had made diligent efforts to locate Herring for two months prior to trial. The Commonwealth therefore introduced over the objections of relator's counsel, Herring's testimony from the preliminary hearing of January 6, 1967.

■■■ Relator now seeks a writ of habeas corpus from this Court on the ground that the admission of Herring's testimony from the preliminary hearing at trial was a denial of his right of confrontation of witnesses against him guaranteed by the Sixth Amendment. The law in this area is derived from two recent cases decided by the Supreme Court, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) and Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). In *Barber* it was recognized that:

" * * * 'The primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or *ex parte* affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' Mattox v. United States, 156 U.S. 237, 242–243 [15 S.Ct. 337, 339, 39 L.Ed. 409] (1895). More recently, in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, 'There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. * * * *' " 390 U.S. 719, 721–722, 88 S.Ct. 1318, 1320.

However, the Court also recognized an exception to the confrontation requirement where:

" * * * a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. E. g., Mattox v. United States, *supra* (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. * * * *" 390 U.S. 719, 722, 88 S.Ct. 1318, 1320.

It was further stated in *Barber* that a witness could not be considered "unavailable" for trial under this exception "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."

---

* The language is taken verbatim from the Superior Court record.

■■ Relator first contends that he has been denied the rights afforded by the confrontation clause because the prosecutorial authorities did not make a "good faith" effort to locate Herring, his juvenile co-defendant. We think that, to the contrary, the state showed considerable efforts to find Herring. An Administrative Assistant from the Fort Mifflin Youth Development Center testified that his institution had been unable to locate Herring since March 8, 1967, when he took flight. Herring's mother testified that she had not heard from or seen her son since his disappearance from Fort Mifflin. An investigator from the District Attorney's office, who had extensive experience in looking for lost persons, testified to his efforts to find Herring for approximately two months prior to trial. He stated that he had questioned between thirty and forty people in the neighborhood where Herring had lived prior to his commitment and flight, ten or twelve of whom were boys or girls about Herring's age. He also stated that he had contacted officials of the County Court Program and the Juvenile Court Program, and that he had checked the listings for the electric company, the gas company, and motor registration. Court was dismissed to allow him to check the listings of the telephone company, and no listing was found. In the course of the considerable discussion of the adequacy of the state's efforts the only further measure which could be suggested by relator's counsel was a check with prosecutorial authorities in neighboring states. This was of course one step which might have been taken, but the central question before us is whether on the whole reasonable efforts were made. We think that the state's efforts were reasonably diligent under the circumstances of this case.[3]

Relator also vigorously contended in the state courts that the testimony given by Herring was given in the hearing on Herring's case as a juvenile, so that it related to a different "party" and "issue" from that in relator's case, and therefore his testimony did not fall within the exception to the confrontation requirement of state statute, 19 P.S. § 582, or the Sixth Amendment of the Federal Constitution. The state court rejected this argument. Relator now urges us that he was denied equal protection of the laws because prior Pennsylvania statutory and case law did not permit the introduction of Herring's testimony, and that in any event because a different "party" and "issue" were involved, Herring's testimony did not fit within the exception to the Sixth Amendment enunciated by the *Barber* case.

■■ Relator does not allege, nor do we find, any intentional, arbitrary and capricious interpretation of the applicable state statute, 19 P.S. § 582, so as to raise substantial question of denial of equal protection. Of course we cannot review alleged errors of state law in habeas corpus applications.

■ Nor do we think that Herring's testimony involved a different "party" or "issue" so as to remove it from the limited exception to the confrontation requirement of the Sixth Amendment. It is true that, technically, the preliminary hearing as to relator was terminated because the County Court judge said that the District Attorney had concluded the preliminary hearing as to relator and

3. The facts of this case are clearly distinguishable from those before the Supreme Court in *Barber*. There the prosecutorial authorities attempted to introduce the testimony of a co-defendant at the preliminary hearing. They asserted that the co-defendant was "unavailable" because he was incarcerated in a federal penitentiary in Texarkana, Texas, about 225 miles from the trial court in Oklahoma, and therefore outside its jurisdiction. However, as the Court pointed out, federal prison authorities, as a matter of statute and practice, permitted federal prisoners to be bound over to testify in state proceedings at the request of state prosecutorial authorities. Therefore it was known where the potential witness was located, and means were at the disposal of state authorities to require the witness' appearance. See also the discussion of this point in Government of Virgin Islands v. Aquino, 378 F.2d 540 at 551–552 (3rd Cir. 1967).

was ready to proceed with the juveniles, including Herring. (See the transcript of the preliminary hearing previously cited). However, at the request of relator's own counsel, the Court continued the evidence in relator's case "so that it may be used as regards (him)" and gave relator's counsel an opportunity to cross-examine Herring. Relator's counsel did in fact cross-examine Herring upon his testimony as it concerned relator's case (See N.T. 401–6); and at that time he was aware (for he himself had made the request that the evidence be continued as to relator) that Herring's testimony might subsequently be used against relator. Under such circumstances the examination and cross-examination of Herring was in substance and effect a part of the preliminary hearing as to relator. Given the apparent implication of *Barber* [4] that testimony given against a defendant at a preliminary hearing with opportunity for cross-examination may later be used against that defendant if the witness is "unavailable" at the time of trial, we think that Herring's testimony was not improperly admitted to evidence at relator's trial.

## ORDER

And now, this 3rd day of April, 1969, it is ordered that the petition for a writ of habeas corpus is denied. There is probable cause for appeal.

4. "While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable, this (i. e. *Barber*) is not, as we have pointed out, such a case." 390 U.S. 719, 725–726, 88 S.Ct. 1318, 1322. The Court there cites Holman v. Washington, 364 F.2d 618 (5th Cir. 1966) and Government of Virgin Islands v. Aquino, 378 F.2d 540 (3rd Cir. 1967). *Holman* was a case where the testimony which prosecuting authorities sought to introduce was from a former trial, and therefore would not seem directly relevant here. *Aquino* would seem more relevant because it involved a case of alleged rape where the testimony of the prosecutrix at the preliminary hearing had been admitted at a subsequent trial because she was unavailable. There the Court observed that cross-examination at a preliminary hearing is very likely to be less searching than cross-examination at trial because the government need only show a prima facie case and therefore often withholds potentially significant parts of its case, and because "credibility is not the issue at a preliminary hearing as it is in a trial" and therefore "all the arts of cross-examination which are exerted to impair the credibility of a witness are useless in a preliminary hearing." However, the Court there concluded that "Nevertheless, we must accept for present purposes the rule which makes no distinction between testimony given at a prior trial and the testimony given at a preliminary hearing." 378 F. 2d 540, 549.