■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODNEY STEEPS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered January 31, 1975, convicting him of grand larceny in the third degree and petit larceny, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. On December 11, 1975, shortly before the commencement of the defendant's trial, a hearing was held pursuant to CPL 670.20 to determine whether the complainant's testimony, given at a preliminary hearing in the Criminal Court should be read into evidence at the trial in lieu of her appearing personally as a prosecution witness. John Delgiorno, a detective assigned to the District Attorney's office, testified that, on the previous day, he and his partner went to 165 Dykeman Street, Brooklyn, to speak to one Carmen Rodriguez. They were seeking information as to the whereabouts of Maria Carion, the complainant in this case and the mother of Carmen Rodriguez. The superintendent told Delgiorno that the daughter had moved seven months earlier. He and his partner then tried to locate the complainant at her last known address at Dwight Street, also in Brooklyn, but were unable to do so. They then went to the Bay Ridge Social Center and the Welfare Department's Central Office to ascertain the address of either or both women. These attempts by them were also unsuccessful. At the continuation of the hearing the next day, the People produced Carmen Rodriguez, the complainant's daughter. She testified that although her mother had been a permanent resident of the "Red Hook projects" for nearly 24 years, she was then visiting her nephew's wife in New Jersey; she had been gone for about two weeks. Although the witness did not know where her mother was in New Jersey, and had no telephone number at which she could be reached, she did testify that her mother had called her the previous week and had spoken to her for a short time. She concluded her testimony by stating that her mother usually made such visits for about a week or two and that she sometimes also stayed at her brother's house for a similar period, and that she should be coming back. Based upon the daughter's testimony, the trial court concluded that the prosecution had used due diligence pursuant to CPL 670.10 in trying to ascertain the whereabouts of the complainant, that such evidence indicated that she was without the State, and that all efforts to bring her before the court had been unsuccessful. It then found that there were sufficient grounds to permit the use at the trial of complainant's

testimony at the preliminary hearing in the Criminal Court. We disagree. CPL 670.10 (subd 1, par [c]) provides, *inter alia,* that an examination of a witness at a pretrial hearing upon a felony complaint, etc., may be read in evidence at the trial of an accused, where such witness "is outside the state * * * and cannot with due diligence be brought before the court." In our opinion, the efforts of the District Attorney's investigators, limited in the aggregate to approximately 24 to 48 hours before the start of the trial, did not constitute "due diligence" within the purview of CPL 670.10, but were cursory and superficial. Although Carmen Rodriguez testified that her mother often stayed with her son on her brief sojourns, there is no evidence in the record to indicate that attempts were made to contact him as to her whereabouts. Furthermore, we are of the opinion that the temporary nature of the complainant's absence was insufficient reason to permit the reading of her pretrial testimony (cf. *Davis v State,* 20 Okla Cr 203). Where the proof shows that a witness is temporarily absent from the State, and in the ordinary course of events such absence will be ended by return, the predicate for the reproduction of his or her testimony at the trial is insufficient *(Webb v State,* 160 Tex Cr Rep 144; *Cumpston v State,* 155 Tex Cr Rep 385). Mere absence, such as a business or pleasure trip of a temporary nature, has been held insufficient to justify the reading of such prior testimony at the trial *(Cumpston v State, supra).* In the instant situation it is undisputed that, over the years, the complainant had made a number of visits to her relatives for a week or two, and that, at the end thereof, she invariably returned to the apartment in which she had resided for nearly 24 years. In view of such circumstances, we are of the opinion that the trial court should have granted a continuance of the case, on its own motion, for an interval of at least 10 days to two weeks. During such period the District Attorney's investigators would have had an opportunity to broaden the scope of their search for the complainant, and perhaps, used the procedures set forth in the Uniform Act to Secure Attendance of Witnesses from Without the State in Criminal Cases, adopted by both this State and New Jersey (CPL 640.10; New Jersey Statutes Ann, 2A: 81-18; cf. *Barber v Page,* 390 US 719, 723). It is also quite conceivable that the complainant may have returned from her trip during such a hiatus. Furthermore, after reading the complainant's testimony at the preliminary hearing, we do not believe that the defendant's attorney's cross-examination of her was as searching as the cross-examination which is usually conducted at a trial. First of all, the total amount of inquiry of the complainant by defendant's attorney encompasses a mere seven or eight of the usual pages of a court reporter's transcript. It should also be noted that the cross-examination of complainant was undoubtedly inhibited by the fact that she testified in Spanish through a court interpreter. As succinctly stated in *Barber v Page* (390 US 719, 725, *supra):* "The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." We are also of the opinion that the prosecutor's questioning of the defendant with respect to a prior, out-of-court identification by the complainant was improper (see *People v Trowbridge,* 305 NY 471). Similarly, the prosecutor's comment on summation concerning the defendant's failure to call his godmother as an alibi witness was prejudicial. No comment should be made concerning the failure to call a witness whose testimony would be trivial or cumulative (see *People v*

*Rodriguez,* 38 NY2d 95; Richardson, Evidence [Prince, 10th ed], § 92, p 66). Consisting, as it did, largely of the complainant's testimony at the preliminary hearing, the evidence against defendant was not "overwhelming". The errors committed by the trial court therefore cannot be considered harmless (cf. *People v Crimmins,* 36 NY2d 230, 241–242). Christ, Shapiro and Titone, JJ., concur; Martuscello, Acting P. J., concurs in the result solely upon the ground that the efforts of the District Attorney's investigators were cursory and superficial, and did not constitute "due diligence" within the purview of CPL 670.10. Hawkins, J., dissents and votes to affirm the judgment, with the following memorandum: A hearing was held on December 11, 1975 pursuant to CPL 670.20 to determine whether the complainant's testimony, given at a preliminary hearing in the Criminal Court, could be read into evidence at the trial. It appears that, on the previous day, two detectives assigned to the District Attorney's office went to an address in Brooklyn to speak to Carmen Rodriguez, the complainant's daughter, as to her mother's whereabouts. They were told that Carmen Rodriguez had moved seven months before. They then tried, unsuccessfully, to locate the complainant at her last known address and at a social center and a welfare department office. At the hearing, which was continued until the next day, the People produced Carmen Rodriguez. She testified that although her mother had lived in the Red Hook projects for nearly 24 years, she was then visiting a relative in New Jersey and had been gone for about two weeks. The witness did not know where in New Jersey her mother was, or at what telephone number she could be reached. She stated that her mother had called her the previous week, and indicated that her mother's visits to New Jersey usually lasted for about a week or two and that she sometimes also stayed at her brother's house. The witness said that her mother should return shortly. The trial court found that the People had used due diligence under CPL 670.10 in trying to locate the complainant and that the evidence indicated that she was without the State and that efforts to bring her before the court had been unsuccessful. The trial court concluded that sufficient ground had been shown to permit the use at the trial of complainant's testimony at the Criminal Court preliminary hearing. CPL 670.10 (subd 1, par [c]) provides, *inter alia,* that testimony given by a witness at a pretrial hearing upon a felony complaint may be received in evidence at the trial of the defendant if such witness "is outside the state * * * and cannot with due diligence be brought before the court." Under the circumstances, noting the delay of 24 hours granted by the trial court and the complainant's daughter's testimony that she did not know her mother's exact whereabouts, the prosecution's investigators exercised due diligence in endeavoring to locate the complainant. Had the defendant's godmother testified, her testimony would have been neither trivial nor cumulative. Cynthia Gore, the daughter of the godmother, claimed to have gone to the defendant's apartment to provide aspirin for him in response to a call from the defendant to his godmother. The alibi defense set up by defendant required a firmer foundation than was provided; the nexus of the phone call to the godmother would have added significantly and materially to such defense. The telephone call to the godmother was testified to not only by Cynthia Gore, but also by James Jones, the second alibi witness. The identification of the defendant was complete, the complainant stating that she "saw him in the face" and that she had seen the defendant on prior occasions "many times because he lives across the street in front of my window." The complainant had testified at the preliminary hearing through an interpreter. Any inhibitions arising therefrom would have persisted even if the complainant had been present at

trial. Sufficient confrontation existed under the circumstances (see *Califor-nia v Green,* 399 US 149; *Mancusi v Stubbs,* 408 US 204). The jury found the defendant guilty of grand larceny in the third degree and petit larceny. The proof against him was overwhelming and I consider that the other errors ascribed are harmless (see *People v Crimmins,* 36 NY2d 230). In my opinion, the efforts of the District Attorney's investigators were neither "cursory" nor "superficial"; on the contrary, they exercised reasonable diligence and pursued the available leads. The daughter's testimony as to her mother's whereabouts were evasive and of dubious credibility. All that she would state was that her mother was visiting the "wife of a nephew", but that she knew neither the address nor the telephone number. Whether "the complainant may have returned from her trip during such a hiatus", had there been an adjournment for a week or 10 days, is conjectural. That the complainant deliberately evaded testifying at the trial is inescapable; the daughter either feigned ignorance of her mother's whereabouts or the mother deliberately made certain that she could not be found. I do not agree that the Uniform Act to Secure Attendance of Witnesses from Without the State in Criminal Cases (CPL 640.10) should have been invoked. Surely there was no need to issue subpoenaes and to virtually arrest the complainant in order to have her testify. In any event, to have invoked that statute presupposes that the District Attorney's investigators knew where to find the complainant. Under the circumstances, that would have imposed an insurmountable burden. That the cross-examination of the complainant at the preliminary hearing was not "as searching as the cross-examination which is usually conducted at a trial" is buttressed by the majority by reference to the cross-examination at the preliminary hearing by the defendant's attorney as encompassing a "mere seven or eight of the usual pages of a court reporter's transcript." There is also further comment upon the examination being "undoubtedly inhibited by the fact that she [the complainant] testified in Spanish through a court interpreter." It may well be that the defendant's attorney did not cross-examine at greater length because of the positive nature of the complainant's testimony; he may have decided that further probing would only have strengthened her identification. The defendant resided in the complainant's immediate neighborhood; in fact, that was one of the bases upon which she initially identified him. I do not think that the number of pages devoted to cross-examination is necessarily an indication of the skill or depth of a lawyer's cross-examination. The reference to the complainant having been inhibited upon her testifying at the preliminary hearing through a court interpreter is not persuasive, for, had she testified at the trial, she would also have had to testify and been cross-examined through a court interpreter. I further believe that *Barber v Page* (390 US 719) is inapplicable. In *Barber* the Supreme Court of the United States stated (p 723): "We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma." There the defendant and the missing witness had been jointly indicted and had been represented by the same attorney at the preliminary hearing. When it became evident that Woods (the missing witness) agreed to waive his privilege against self incrimination, the attorney withdrew as Woods' counsel, whereupon, as was stated by the Supreme Court (p 720): "Parks did not cross-examine Woods, although an attorney for another codefendant did." In *Barber,* the State argued that there had been a waiver of the claim of self incrimination by virtue of the failure to cross-examine at the preliminary hearing. The court rejected that argument because the

witness was available; he was simply incarcerated in a Federal penitentiary and no effort had previously been made to secure his attendance. Nevertheless, the Supreme Court, in reversing, noted that where an opportunity for cross-examination at a preliminary hearing did occur, the holding need not apply. As stated (pp 725–726): "While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case. * * * Cf. *Holman v. Washington,* 364 F.2d 618 (C.A. 5th Cir. 1966); *Government of the Virgin Islands v. Aquino,* 378 F.2d 540 (C.A. 3d Cir. 1967)." The citation of Richardson, Evidence (Prince, 10th ed, § 92, p 66) in connection with the prosecutor's comment as to the failure to call the godmother, in my opinion, is not controlling, for the preceding language from the very same section is more persuasive: "If the witness may naturally be inferred to be favorable to a party, and the testimony of the witness would be important, the burden is upon that party to account for the witness' absence in order to escape the possibility of an unfavorable inference." The godmother's status, in view of the alibi, comes squarely within the comments in Richardson, particularly since no explanation was offered for her failure to testify. The comment by the prosecutor, if unjustified, was not of sufficient import to warrant reversing the conviction (see *People v Crimmins,* 36 NY2d 230). Accordingly, I vote to affirm the judgment of conviction.